**Rowena Y. EARLE, Appellant,**

v.

**Lawrence D. EARLE, Respondent (Two Cases).**

**Nos. WD 48911, WD 48992.**

Missouri Court of Appeals, Western District.

April 11, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Application to Transfer Denied July 25, 1995.

John Richard Shank, Jr., Kansas City, for appellant.

Nancy A. Beardsley, Kansas City, for respondent.

Before ULRICH, P.J., and KENNEDY and BERREY, JJ.

KENNEDY, Judge.

Lawrence D. Earle and Rowena Y. Earle were married in Pennsylvania in 1976. They lived together until 1991, when Lawrence left Rowena. Rowena filed suit, at the beginning asking for legal separation, but later asking for dissolution. Dissolution was granted after trial. In connection with the dissolution,

the decree set aside to each spouse a few items of non-marital property, allocated a substantial marital estate between the spouses, and gave Rowena judgment for maintenance.

Rowena has appealed. She complains of an inequitable division of marital property, and complains that her maintenance award is too small. There is no issue on the appeal about the extent or the value of marital property.

The parties during their marriage were engaged in various aspects of the proprietary school business. As they started, they served as consultants to various proprietary schools, and as liaison between the schools and the Federal Department of Education. Much of the cost of students' attendance at these schools came from federal government funding, and it was the parties' business to facilitate the application for government funding and its prompt collection. Later they got into the business of owning and operating proprietary schools through a corporation with the name of Edudyne, Inc. At one point, Edudyne, Inc., had eight such schools. At the time of trial, that number had been decreased to three. The main marital asset at the time of the dissolution was the stock of Edudyne, which was valued by the court at $850,000. Neither party complains of this valuation.

We here list the marital assets, their valuation, and the spouse to whom they were awarded by the decree:

| Property | Husband | Wife |
|---|---|---|
| Residence—Kansas City, Missouri (net of $171,000 mortgage) | | 84,000 |
| Lot Adjacent to Missouri Residence | | 10,000 |
| 1978 Mercedes Benz | | 5,000 |
| 1988 Lincoln Town Car | | 8,000 |
| Household furnishings, clothes, etc. | | 50,000 |
| Mercantile Bank Checking Account | | 600 |
| 3 Boatmen's Bank IRA Accounts | | 17,674 |
| I.R.S. Debt—1991 | | (4,258) |
| I.R.S. Debt—1992 | | (13,232) |
| Condominium—Pt. Pleasant Beach, NJ (net of $415,000 mortgage) [1] | (85,000) | |

1. Amount of mortgage estimated by us.

| Property | Husband | Wife |
|---|---|---|
| Commercial Real Estate—Matawan, NJ (net of $410,000 mortgage) [2] | 160,000 | |
| 1987 Ford Bronco | 4,500 | |
| Wellcraft Suncruiser Boat | 10,000 | |
| Edudyne Systems, Inc. Common Stock | 850,000 | |
| E.I.P., Inc. Common Stock | 23,250 | |
| Scuba Diving Equipment | 3,000 | |
| Computer Equipment | 900 | |
| Tools | 500 | |
| Stereo Equipment | 700 | |
| Personal Clothing | 1,000 | |
| Midlantic Bank IRA Account | 9,933 | |
| I.R.S. Debt—1992 | (14,096) | |
| I.R.S. Debt—1993 | (21,000) | |
| Credit Card Debt | (2,000) | |
| Debt to Edudyne Systems, Inc. | (207,884) | |
| **TOTALS** | **$733,803** | **$157,784** |

Wife was awarded maintenance in the amount of $3,750 per month.

Notwithstanding a 20–year difference in their ages, (Lawrence was the younger), the parties had a compatible and loving marriage from the time they were married in 1976, until shortly before their separation in 1991. They worked closely together in the operation of their business. Husband was the executive head of the business, but Rowena played a major, if secondary, role in its management and development.

In 1984 Rowena had some kind of cerebral incident, described in the testimony as a "brain hemorrhage." She was hospitalized for ten days, and was three months in recuperating before she returned to work.

In 1991, Rowena had a second hip replacement operation. Earlier, she had had the other hip replaced. She was at the time of the second hip replacement 68 years old, 20 years older than Lawrence. Lawrence left Rowena in their Platte County, Missouri, residence and began living with 34–year–old Lisa; the two of them lived together in San Antonio, Texas, at the time of the trial. Lisa and her mother, Shirley, have been and continue to be highly paid employees of Edudyne, Inc., and, since Rowena's and Lawrence's separation, have both been placed on the board of directors. Rowena has been removed from the board of directors.

Lawrence and Rowena have a luxury condominium (they bought it in 1989 or 1990 for a purchase price of $650,000) in Point Pleas-

2. Amount of mortgage estimated by us.

ant Beach, N.J. While they were living together, they divided their living between two residences—the New Jersey condominium and the Missouri residence. At the time of the trial, the New Jersey condominium had sat vacant for two-and-one-half years, while Lawrence paid $6,500 per month on the mortgage. He claimed, and the court found, that the property had a negative equity of $85,000. Lawrence testified he couldn't live in it or rent it because Rowena had denuded it of its furnishings shortly after the separation. He proposes to sell the property, though. When he does, he will be relieved of the $6,500–per–month mortgage payment, although he will owe the $85,000 deficiency.

The trial court decree gave Rowena 18 percent of the net value of the marital assets. He considered, no doubt, the uncertain future of Edudyne, Inc. Edudyne's prosperity depends in a large measure upon the availability of Federal grants and loans to students of their schools. These funds were easily obtainable during the 1980's and Edudyne flourished during that period. By the time of trial, though, Edudyne's business had contracted sharply, and Lawrence was very much worried about its prospects. Its eight schools had been reduced to three. Still, the trial court valued it at $850,000, and neither party challenges that valuation. (The evidence ranged from a low of $401,554 to a high of $3,000,000.)

▪ Wife says it is unfair to give her only 18 percent of the marital estate, and to give husband 82 percent. We have often said that equal division of marital property is not necessary. We have often upheld unequal divisions on the ground that they were equitable as between the parties. See, Mika v. Mika, 728 S.W.2d 280 (Mo.App.1987); Scott v. Scott, 645 S.W.2d 193, 195 (Mo.App.1982); Schwarz v. Schwarz, 631 S.W.2d 694, 695 (Mo.App.1982); Stamme v. Stamme, 589 S.W.2d 50, 53 (Mo.App.1979); In re Marriage of Burris, 557 S.W.2d 917, 918 (Mo. App.1977). In this case, we think the disparity between husband's and wife's shares is wider than trial court discretion permits.

▪ We note that the wife took an active and a valuable role in the development of the business that turns out to be the major marital asset, and the only income-producing asset. It is true the husband was the dominant figure in the business, but wife played an essential part. She worked side-by-side with Lawrence in the development and the operation of their business. The trial court's only reason for the wide disparity in the two awards was the fact of the husband's greater contribution to the development of the business. This would justify some difference in the two awards, but not so much as 82 percent to 18 percent ratio. While Lawrence's contribution to the acquisition of the marital estate, section 452.330.1(2), might be greater than Rowena's, two other factors would weigh more heavily in Rowena's favor. Those two factors are the relative economic circumstances of the parties, and the conduct of the parties during the marriage, section 452.330.1(1) and (3).

Wife has reached an age, and a condition of health, where it is unlikely that she can recoup her fortunes. Her prosperity for future earnings are dubious. She is not likely to accumulate more than what she gets from the marital estate in this proceeding. This is a salient point. Husband on the other hand has good earning power, and he is 20 years younger than Rowena. He estimated that, if Edudyne were to go out of business, he could find employment for $200,000 per year. The case is much like Dardick v. Dardick, 670 S.W.2d 865, 870 (Mo. banc 1984), in which the court took note of the fact the wife would not likely be able to accumulate an estate after the divorce. The court therefore affirmed an award to the wife, against the objection of the husband.

▪ It is not feasible to give wife marital assets equal to one-half the marital estate. She is not able to manage Edudyne. It requires active management, and its headquarters and its properties are located a long way from wife's present residence. The husband alone can manage the marital assets in such a way as to maximize their potential. The trial court acted wisely in awarding to the husband all the marital property except the Platte County house and some items of personal property.

Wife should have a compensatory cash award, which, along with the other marital property awarded to her by the court, brings her share of the marital estate to 35 percent. Because of the precarious value of the marital assets awarded to husband, which he takes with risk of loss from changing market and business conditions, it would not be equitable to give a cash award sufficient to bring her share to 50 percent of the total value of the marital estate. The amount of the cash award is $154,271.45, to bear interest from and after December 8, 1993, at the rate of nine percent per annum.

■ Wife complains that the $3,750 per month maintenance award is insufficient. Leaving aside any maintenance payable by Lawrence, Rowena's monthly income consists of social security of $720 per month, and a Braniff pension of $99.80 income. None of the marital property awarded to Rowena is income-producing. Her monthly needs, according to her own testimony, are $10,257 per month, including the $2,750–per–month mortgage payment on the house.

Lawrence offered to the court a simple solution: Let Rowena sell the house. She does not need a 5,600–square–foot house with a swimming pool, he said. Let her buy a $100,000 house without a swimming pool. If she needs to swim for therapy—as the evidence shows she does—she can get a membership in a club. Without the mortgage payments, and with reduced maintenance expense, she would not need $10,257 per month; she could get by on $3,800 per month, and, with her social security and with her Braniff pension, he would need to pay only $3,000 per month. The court awarded Rowena $3,750 per month.

Husband's income has been as follows: 1989, $235,442; 1990, $235,500; 1991, $370,-077; 1992, $308,077; 1993 to date of trial, $194,710 (annualized, $259,613). In addition, he has borrowed upwards of $207,000 from Edudyne. He had not made any repayment of this amount, although he had owed it for some time at the time of trial.

This income is derived from the business which wife worked with him to develop. Now the wife is being excluded from the fruits of their joint labors. Her place has been taken by Lisa, with whom Lawrence has taken up residence. The business has provided Lisa, through Lawrence's favor, a $10,000 bonus in addition to her salary, gifts of jewelry, and foreign trips. Lawrence has taken Lisa on trips to Ireland and to Greece, courtesy of television stations on which Edudyne had advertised its schools.

The $3,750–per–month maintenance award virtually assures that Rowena must sell the house where she lives, as suggested by husband, and move into more modest quarters. That might be the prudent thing for her to do, but that may not be her choice. All the factors which we are directed by section 452.335.2 to consider in fixing maintenance indicate a more liberal maintenance award.

Husband's income, and wife's needs, dictate monthly maintenance no less than $6,500, effective December 8, 1993. When wife's social security and Braniff pension are added to that amount, and an estimated $800–$1,000 per month income from the compensatory cash award of $154,271.45, she should have an income in the vicinity of $8,300 per month. We take into account that the maintenance payments are deductible by husband for income tax purposes, and taxable to wife.

We remand the case to the trial court, for the entry of a new judgment in accordance with the foregoing opinion. The court after hearing additional evidence and argument, or upon agreement of the parties, may make the cash award and interest payable in reasonable periodic installments over no more than three years, with such security as the court may require.

All concur.