Christina Jean **HAMMER**, Respondent,

v.

Stanley Junior **HAMMER**, Appellant.

No. WD 62368.

Missouri Court of Appeals,
Western District.

July 27, 2004.

Curtis G. Eylar, Kansas City, MO, for Appellant.

Larry S. Buccero, Lee's Summit, MO, for Respondent.

Before VICTOR C. HOWARD, HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Stanley Hammer (Husband) appeals the trial court's judgment and decree of dissolution of his marriage to Christina Hammer (Wife). Husband raises one point on appeal, claiming that the maintenance award was excessive and not supported by the evidence. We affirm.

## Background

The parties to the dissolution were married in 1974. They have five children, two of which, a 13–year–old and an 11–year–old, were still unemancipated. In August 2001, Wife filed her petition for dissolution of marriage, which included a prayer for maintenance. The trial court found that Wife lacked sufficient property to provide for her own needs, that she was unable to support herself through appropriate employment, and awarded Wife $900 monthly maintenance. Husband appeals the amount of the award.

## Standard of Review

Provisions in a divorce decree will be affirmed unless there is no substantial evidence to support them, they are against the weight of the evidence, or the trial court incorrectly declares or applies the law. *Stangeland v. Stangeland*, 33 S.W.3d 696, 700 (Mo.App.2000). The trial court has broad discretion in awarding maintenance, and its decision will not be overturned absent an abuse of discretion. *Id.* To determine whether the trial court abused its discretion, this court reviews the evidence in a light favorable to the decree, disregarding any evidence to the contrary and deferring to the trial court's judgment even if the evidence could support a different conclusion. *Id.*

## Maintenance

The court's award to Wife of maintenance in the amount of $900 per month is the sole focus of this appeal. Husband does not deny that Wife should receive maintenance; he contends that $900 per month ($10,800 per year) is excessive.

Section 452.335 prescribes the approach the court is to take in determining maintenance. The court first must determine whether the threshold requirements for maintenance are met. The court can

award maintenance only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

§ 452.335.1. If there is a gap between the "reasonable needs" of the spouse and the resources and potential earnings of that spouse, and the other spouse has the ability to pay maintenance, maintenance should be awarded. *See Estes v. Estes,* 767 S.W.2d 370, 373 (Mo.App.1989).

When maintenance is to be paid, the court is to consider all relevant factors in ascertaining a just and reasonable award of maintenance:

The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to

him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

§ 452.335.2. This statute gives broad discretion to the trial court in applying factors on which the award is based. *Stangeland,* 33 S.W.3d at 701. The court is to apply the factors so as to balance the reasonable needs of the spouse seeking maintenance against the ability of the other spouse to pay. *Hosack v. Hosack,* 973 S.W.2d 863, 872 (Mo.App.1998). "[T]he court is not required [in the absence of a request for specific findings] to announce for the record the significance of and the weight that it gave to each factor in determining its award of maintenance." *See Stangeland,* 33 S.W.3d at 701 (*quoting McCallister v. McCallister,* 809 S.W.2d 423, 429 (Mo.App.1991)).

In this case, the trial court did not make a specific finding as to Wife's needs. The court is not required to make such findings in the absence of a proper request. *Id.* Therefore, we must consider all factual issues as having been resolved in accordance with the results reached. Rule 73.01(c). *See, e.g., Childers v. Childers,* 26 S.W.3d 851, 855 (Mo.App.2000); *Johnson v. Johnson,* 671 S.W.2d 426, 427–28 (Mo. App.1984) (where no finding as to wife's reasonable needs and no request for specific findings, facts are assumed to have been found in accordance with the result reached). Accordingly, in view of Wife's earnings and the award of maintenance,

the trial court implicitly found that Wife's reasonable needs were about $29,500 per year.

### Husband's and Wife's Needs and Earnings

At the outset, it must be stated that this is a somewhat unusual case, for reasons related to Wife's extremely timid and faltering attempt to prove her reasonable needs. At trial, Wife presented evidence as to some of her anticipated expenses. She submitted figures for rent, telephone, trash service, automobile gas and oil, automobile insurance, health and dental insurance, food, clothing, prescription drugs, dental care, vision care, hair salon, toiletries, and cell phone. She failed to present any estimate for expenses for utilities, renter's insurance, car maintenance, car depreciation, and personal property taxes. Thus, the "reasonable needs" she would have post-dissolution were not entirely clear. Husband, looking at Wife's proof of expenses, says that the reasonable needs she proved amount to about $20,000 per year.

Wife earns less than her reasonable needs. Wife earns $9.65 per hour as a retail clerk and works approximately forty hours per week. Wife's gross monthly income is about $1673. Her paystub indicates that her net monthly income is about $1542, or about $18,500 per year.

Husband has worked at Ford Motor Company for 35 years. He has also earned a small amount each year from part-time work as a "utility man." Wife had only occasionally worked outside the home. Husband's earnings in the recent five years had progressed steadily from $60,000 in 1997 to a high of $140,000 in 2001. The court averaged Husband's income over the past five years and found it to be an average of $7400 per month, or approximately $89,000 per year.

Apparently, the parties were used to living at the upper limit of their income. At the time of the dissolution they owned a house and swimming pool valued at $255,000 with a net equity of $5,000 and mortgage payments of $2,250 per month. They also each had credit card debt of close to $15,000. The couple owned three vehicles and other items of tangible personal property, but had little in the way of investments or other assets (apart from Husband's pension) to divide. There was no non-marital property.

There were two hearings. During the first hearing, Wife was still in the marital home. The court awarded joint legal and physical custody, and established maintenance at $900 per month. Husband then moved to reopen the evidence. The court granted Husband's motion to reopen. The court heard additional evidence, and again ruled, inter alia, that maintenance would be $900 per month. During the period Wife had remained in the marital home, Husband made the house payments, paying all the utilities. At the time of the second hearing, Wife had just moved to a townhouse having a rent of $660 per month.

The parties share joint legal and physical custody of the youngest child, Elizabeth. The thirteen-year-old, Daniel, is in Husband's custody. The emancipated nineteen-year-old, Timothy, also resides with Husband. Husband was initially ordered to pay child support in the amount of $500 per month when it appeared both children would be in joint custody. After the rehearing, the support was reduced to $350 per month, and Daniel was placed in Husband's custody. The marital home was awarded to Husband, subject to the mortgages. Two pick-up trucks, including a 1999 F–150, were awarded to Husband, and one vehicle, a 1998 Ford Windstar, to Wife. Each was awarded a portion of the

household furnishings. The non-mortgage debts were distributed according to the identity of the cardholder: $13,000 assigned to Wife, and $15,000 assigned to Husband.

### Wife's Anticipated Expenses

Appellant Husband argues that Wife failed to show that she had reasonable needs that could amount to more than the expenses she proved at trial. Husband does not dispute the items Wife did submit. He also acknowledges that her gas utility expense could be $75 per month, although her proof of her gas expense was at best weak.[1] He does not acknowledge any other amount for any other utility or any other expense. He argues that the court is limited to specific expenses that Wife *proved*, even if it is obvious she failed to prove other necessary expenses.

In response, Wife essentially acknowledges that she did a poor job of estimating her expenses, but suggests that it was because she did not know what all of the expenses would be. She says that her husband handled most of the finances, including all automobile and insurance-related expenses. Wife's expense statement, rather than estimating such expenses, said only "Stan has paid. I have no idea." At the time of the second hearing in the case, Wife had been occupying her newly rented townhouse for only two weeks and had not yet received utility bills or arranged her renter's insurance. Therefore, says Wife, she was unable to estimate her electrical utility, gas utility, and renter's insurance. She also had never handled car maintenance expenses, and failed to prove up an amount for auto maintenance. She also, she now says, understated some expenses (such as food at $97 per month). We note

also that nothing was included for any vehicle depreciation, personal property taxes, or registration.

The record thus suggests that Wife "underproved" some of her anticipated expenses. Husband's argument that Wife failed to prove anything as far as electrical utilities and certain other items is correct. Here, for example, is the testimony of Wife about electrical utility expense:

Q. Have you ever known what [the electrical bill was at the marital home]?

* * * *

A. In the wintertime, it was around $65, $70, I believe. In the summertime, it would go up around $200, 219; I think the highest was $245; that included the running of the swimming pool.

Q. Okay. You don't have a swimming pool at your townhouse [that you have just begun to occupy]?

A. No.

Q. Okay. So it's probably a fair estimate that the electric bill might be on average maybe $90 a month?

* * * *

A. I have no idea.

If Wife and her attorney had proceeded properly, she would have had an "idea" and would have been prepared to make good faith estimates of utility expenses and realistic estimates of other expenses like food. Also, expenses of things like auto maintenance and renter's insurance would have been established. Trial judges are allowed to employ their common knowledge of economic realities; but it is important for litigants to remember that trials are about proving things. Judges do not make up facts out of thin air.

---

1. At trial, Wife testified that "they" say her gas expense might be $75 per month in her new quarters. When pressed by Husband's counsel as to *her* opinion, she stated that she had "no idea."

Of course, pursuant to Rule 73.01(c), we presume that the court regarded her reasonable needs as somewhat larger than the amount that Husband says she proved. As noted, when we add the maintenance award (almost $11,000 per year) to Wife's income potential ($18,500 per year), we can say that the court regarded her reasonable needs as about $29,500 per year. The question is whether there is evidence to support such a determination of her reasonable needs when her submitted and proven expenses fall short of that figure.

Husband argues that the maximum amount of maintenance that could have been awarded in this case was about $200 or less per month because that was the difference between her resources and what he says she proved as her anticipated expenses.

We find nothing in section 452.335 stating that the trial court may not consider the *entire* record (including the length of the marriage, standard of living, differences in earning capacity, foregone career development, *and* the party's proof of anticipated expenses) in an effort to carry out the directives of the statute in setting a just and realistic award of maintenance. *See Brueggemann v. Brueggemann,* 551 S.W.2d 853, 857 (Mo.App.1977). Moreover, we do not agree that a trial court is singly bound by a party's expense submission when there is reason to believe that the total of the submitted expenses is either inordinately high or unrealistically low. *See Eckstein v. Eckstein,* 748 S.W.2d 945, 946–47 (Mo.App.1988) (court evaluates the merits of each party's income and expense claims); *Jones v. Jones,* 866 S.W.2d 507, 509 (Mo.App.1993) (court noted that husband's expense statement was "unrealistically low" because he failed to include some ordinary expenses, but court also found he had the ability to meet his rea-

sonable needs while contributing to support of wife and daughter).

▇▇▇ Maintenance under section 452.335 is not alimony. Alimony was abolished in the 1973 Dissolution of Marriage Act. *See Cates v. Cates,* 819 S.W.2d 731, 734 (Mo. banc 1991). It is true that, under section 452.335, substantial misconduct negatively affecting the relationship or burdening the other spouse may be considered with regard to the amount of maintenance, once it has been determined that maintenance will be ordered. *McIntosh v. McIntosh,* 41 S.W.3d 60, 69 (Mo.App.2001). However, maintenance is not about punishing one spouse more than another, or imposing an assessment of damages on a spouse. *Cates,* 819 S.W.2d at 734; *see* 452.335.2(9). Maintenance is about the reasonable need of the more dependent spouse. *See Nelson v. Nelson,* 720 S.W.2d 947, 952 (Mo.App.1986). Maintenance is a means of providing support until the more dependent spouse can achieve a "reasonable self-sufficiency" in the light of the statutory factors. *Cates,* 819 S.W.2d at 734–35.

The key word for purposes of this appeal is the word "reasonable." The word "reasonable" modifies the concept of "needs" in the statute. Also, as used in *Cates,* 819 S.W.2d at 735, "reasonable" modifies the phrase "self-sufficiency." Reasonable in light of what? In light of the relevant factors such as those enumerated in section 452.335. *See Toomey v. Toomey,* 636 S.W.2d 313, 316 (Mo. banc 1982) (reversible error to preclude wife from showing, in connection with maintenance request, that she was a homemaker during marriage); *Earle v. Earle,* 901 S.W.2d 140, 143 (Mo.App.1995) (court increased monthly maintenance from $3,750 per month to $6,500 per month so wife would have total income of approximately $8,300 per month); *Marriage of Ross,* 772

S.W.2d 890, 893 (Mo.App.1989) (affirming maintenance of $750 monthly where couple had "enjoyed a good standard of living," wife had limitations as to types of jobs due to health restrictions, and where it was not realistic to believe that education or training would dramatically improve wife's employment opportunities).

It should also be noted that an award of modifiable maintenance is not cast in stone. Once again, reasonableness is the touchstone. Accordingly, an award is subject to later modification in the event that a substantial and continuing change of circumstances should result in the award becoming "unreasonable." *See* § 452.370.

The legislature in section 442.335 specifically gave discretion to the trial court to consider all "relevant factors," including those set out in the statute. Under prior divorce law (before 1973), the pre-dissolution standard of living presumptively established the level of need. *McMullin v. McMullin*, 926 S.W.2d 108, 112 (Mo.App. 1996). Under section 452.335, however, the pre-dissolution standard of living does not *automatically* establish the level of need. *McMullin*, 926 S.W.2d at 112. The statute merely directs its consideration as *evidence* of reasonable need in appropriate cases. *Id.; see* § 442.335(4). In *McMullin*, the court rejected the wife's contention that the prior standard of living should automatically govern the determination of her "reasonable needs." The court recognized that in many cases the pre-dissolution standard of living is an important indicator of reasonable need, especially in a marriage of substantial duration where one spouse has foregone career development. *Id.* at 112 (*citing Brueggemann*, 551 S.W.2d at 857). However, because the marriage in *McMullin* was not lengthy (seven years) and because the marriage actually facilitated the wife's opportunity to develop a career, the court concluded that the award need not be based on the prior standard of living. *Id.* at 113. The court thus clearly articulated that had those factors been different, the court would have considered the standard of living an important evidentiary consideration. *See also M.A.Z. v. F.J.Z.*, 943 S.W.2d 781, 789 (Mo.App.1997) (also a seven year marriage, high standard of living; in spite of the fact that it was not a lengthy marriage and wife had income-producing resources, court still considered the standard of living in allowing maintenance in the amount of $90,000 per year).

There is, of course, a routine procedure for proving "reasonable needs." It starts with (1) each party's statement of income and expenses, and (2) each party's statement of marital and non-marital property and liabilities. In projecting expenses, each party seeks to express the anticipated expenses that accord to the desired standard of living. At trial, the expense and income statements are updated and sometimes disputed. The trial judge then decides what is appropriate and reasonable in light of the relevant factors, including those listed in the statute. It is seldom a matter of mathematical precision, and expense submissions are not required to be based on strict necessity. The purpose is to achieve a just result in light of the relevant considerations.

Obviously, expense statements and accompanying testimony are important tools for helping determine reasonable needs; but they are not the only evidence the court can consider in this determination. *Toomey*, 636 S.W.2d at 316. There is no indication in the statute that poorly proven expense submissions must function as handcuffs for the trial judge any more than inflated claims of expenses. Section 452.335, after all, does not mention "income and expense statements" or even "income and expenses" as the total consid-

eration. A trial judge must exercise discretion in determining "reasonable needs" when a party makes unrealistically high or low expense estimates (or says, as in this case, "Stan has paid. I have no idea.").

When a marriage is of short duration and lacks the factors present here, the court will be more exacting in requiring justification of a relatively high claim of reasonable need. *See, e.g., McMullin,* 926 S.W.2d at 112. In such a case, an attempt by the court to provide a comparatively upscale lifestyle for one non-needy spouse at the other's expense is inconsistent with the statutory objective of reasonable self-sufficiency. *Id.*

In the case of a marriage of this duration and these circumstances, in contrast, the trial court should consider the marital standard of living and differences in earning capacity as evidence of reasonable need. Here, even *after* Husband had paid maintenance and child support, he will have a gross income of $74,000 on which to live while Wife will have a gross income of less than half that figure, even including the maintenance and child support. In *Brueggemann,* the court stated:

> The emphasis on self-sufficiency [under the new dissolution act] does not, however, require us to totally ignore the fact that a marriage did exist. In many marriages by tacit or express agreement, the wife remains at home and cares for the children and foregoes her opportunity to develop a career or acquire job experience. Where such a spouse has been out of the job market for extended periods, an independent determination of her appropriate lifestyle and earning capacity may be diffi-

cult or impossible. In such a case, it may be proper for the court to place greater emphasis on the lifestyle enjoyed during the marriage, the duration of the marriage and other traditional factors.

551 S.W.2d at 857.

Certainly counsel in this case had resources at hand which would have rendered Wife's ignorance of her expenses irrelevant—resources such as discovery tools and investigative tools which can assist a party in making good faith estimates.[2] But the question here is not whether Wife should have better presented her anticipated expenses. Wife is not appealing. Also, it must be remembered that this is a dissolution action, not a damage action, and section 452.335 imposes an independent duty on the court to achieve a just result based on *all the factors* in the record. The question is whether the court erred in attempting to carry out the statutory directives.

Husband overlooks the "relevant factors" specifically mentioned in 452.335. He overlooks first that Husband earns over four times as much as Wife. *See* § 452.335.2(3). Husband is well established in his employment. Wife, at approximately age 49, is for the first time shouldering the responsibility to carve out a living for herself and maintain her own household. There is no evidence or argument that she has the skills, education, and training to significantly increase her income. *See* § 452.335.2(2).

The standard of living established during the marriage was obviously much higher than the standard of living that Husband wishes to impose on Wife at this

---

**2.** Wife's expense statements and trial testimony give one the impression that, even though she was seeking maintenance, she thought she was under a duty to make her expense estimates as low as possible. Thus, her original estimate of rent was $250 (which later changed to $660 when she actually had to move) and her food estimate was $97 per month (which never was adjusted).

time. *See* § 452.335.2(4); *Marriage of Ross*, 772 S.W.2d at 893.

This was a 28–year marriage in which Wife devoted herself to the household, the children, and her husband (having, as Husband acknowledged was true for most of that time, "waited on [him] hand and foot"). Wife, with Husband's approval, engineered and stabilized the operation of the household, leaving Husband free to advance his own career objectives. She never developed a career outside the marriage. *See* §§ 452.335.2(6) and (7).

Husband makes no argument that he is unable to pay the maintenance. Husband also does not argue that Wife has additional income sources.[3]

Putting together Wife's earning capacity and the maintenance award, we infer that the court implicitly found that Wife's reasonable needs were about $29,500 per year. The record showed without dispute that she could provide only about $18,500 per year on her own. Given 1) the length of the marriage, 2) the fact that both Wife and Husband were content for her to forego her career development for other mutually desired objectives, 3) the comparative difference in earning capacity, and 4) the standard of living during the marriage, we cannot say that the court's determination of Wife's reasonable need is surprising. It certainly is not shockingly large. There is no indication here of any capriciousness or of any lack of careful consideration by the trial court. To the contrary, we suggest the award shows a conscientious determination to set an amount the court "deems just," as required by statute, in spite of the failure of Wife to fully prove her anticipated expenses.

The trial court's ruling in this case was not an abuse of discretion. The judgment is affirmed.

HOWARD, J., concurs.

LOWENSTEIN, J., dissents in separate opinion.

HAROLD L. LOWENSTEIN, Judge, dissenting.

I respectfully file this dissent. The Husband concedes Wife is entitled to maintenance. The only issue here is that the $900 monthly maintenance award was excessive since it was not supported by the evidence.

There were two hearings in this case in which the Wife was allowed to present evidence of her income and expenses. Her evidence at the first hearing was presented while she was still in the marital home, and at the second hearing after she had moved into an apartment. Her evidence on monthly income was $1542 a month. Her evidence as to the amount of reasonable monthly needs was $1743, leaving a shortfall of $201. The trial court awarded maintenance of $900. *In re Marriage of Tappan*, 856 S.W.2d 362, 367 (Mo.App.

---

**3.** The trial court entered a QDRO with regard to Husband's pension. Although Husband "guessed" at the second hearing that Wife could begin withdrawing her share of the pension in the near future, he offered no evidence that she could do so. Nor did he show what amount of income she would allegedly receive. Because the court found that Wife could not provide for her reasonable needs, we must presume the court found no evidence that Wife could access the pension before Husband retires. In that respect, this case is unlike *Tappan v. Tappan*, 856 S.W.2d 362, 367 (Mo.App.1993), a case in which the trial court found that wife would receive $2,311 in current monthly income under the QDRO; wife also received a house worth $162,000 and $123,000 in marital cash, had a college degree, and was capable of working part time; court found wife's reasonable needs were $2,578; court held that $1,000 per month was the outer limit of acceptable judicial discretion to award maintenance in that case.

1993), this court held a maintenance award with a "cushion" in excess of $400 a month was an abuse of discretion.

Although trial courts have broad discretion in fashioning maintenance under Section 452.335.2, this discretion is not unfettered. *Bybee v. Bybee*, 879 S.W.2d 793, 795 (Mo.App.1994). "An award of maintenance is based upon a spouse's need, as reflected by the extent to which that spouse's expenses exceed his or her ability to pay those expenses." *Hartzell v. Hartzell*, 976 S.W.2d 624, 626 (Mo.App.1998). The burden is on the spouse seeking maintenance to prove the amount of those expenses. *Cohen v. Cohen*, 73 S.W.3d 39, 50 (Mo.App.2002).

The majority cites *Eckstein v. Eckstein*, 748 S.W.2d 945, 946–47 (Mo.App.1988), for the proposition the trial court could, and in fact did use its common knowledge to increase the amount of maintenance beyond Wife's evidence on her expenses. However, the court in *Eckstein*, affirmed an amount of expenses lower than the wife's trial evidence of her expenses. When in that opinion the eastern district said the trial court has broad discretion in applying the Section 452.335 factors, and in evaluating "the merits of each parties' expense claims," such statement does not necessarily imbue the trial court with the ability to go beyond the evidence to the extent as is present in the case at bar. That quoted portion does no more than the same court held in *Trunko v. Trunko*, 642 S.W.2d 673, 674–75 (Mo.App.1982), by stating the oft-cited rule that a "trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony." The majority also cites *Jones v. Jones*, 866 S.W.2d 507 (Mo.App.1993), for the proposition that the trial court can determine that one party's expense statement was "unreasonably low." However, the trial court's "determi-

nation" in *Jones* only dealt with the threshold requirement that the paying spouse be able to afford support payments before a court may award maintenance to the other spouse. It should be noted that the "determination" did not directly affect the amount of the maintenance award and was largely irrelevant since the husband in *Jones* had sufficient income to meet his needs while helping provide for the needs of his wife and daughter.

The majority opinion reaches the conclusion that Wife's expenses were "underproved," and tops that conclusion with the assumption that the judge determined the amount "as somewhat larger." The term "underproved" appears to be another way of saying that Wife has proved her reasonable needs to a certain extent but failed to prove any need beyond that point. As such, the trial court would be engaging in speculation as to Wife's needs beyond the expenses she had been able to prove. An award of maintenance cannot stand without evidence to support it. *Wofford v. Wofford*, 858 S.W.2d 843, 844 (Mo.App. 1993). Because Wife testified that she did not know how much she would incur for electricity, car maintenance, or rental insurance, the trial court could not have considered these expenses in determining maintenance. *M.A.Z. v. F.J.Z.*, 943 S.W.2d 781, 790 (Mo.App.1997) (holding that income and expense statement did not constitute substantial evidence to support maintenance award when wife conceded her lack of knowledge about actual expenses). The majority properly points out if Wife "had proceeded properly, she would have had an 'idea' and would have been prepared to make good faith estimates of utility expenses and realistic estimates of other expenses like food. Also, expenses of things like auto maintenance and renter's insurance would have been established." The problem on appellate review of this case is to determine what of

the nine specific and the one catchall of relevant factors in determining maintenance were missed or forgotten. Without any proof by the party with the burden, determination of what is a reasonable amount of maintenance is purely guesswork leaving this court in the position of having to approve a figure for which there is no calculus of proof.

The majority tops off with an additional conclusion the trial court must have relied on the additional factors such as the Husband having established a higher standard of living and having the ability to pay more in maintenance. I am unwilling to leap to these conclusions where the award exceeds by $700 a month the evidence most favorable to the party seeking maintenance. My preference would be to leave much in the area of family law to the discretion of trial judges, but feel, without some explanation, this court should not affirm this award. When a trial court goes well beyond the evidence offered of reasonable need to find a greater amount of maintenance than facially justified, the trial court should provide the litigant the reason for such judgment.

What amount would be reasonable here? If the court had relied on the Husband's greater income and his ability to pay, would maintenance here of $1900 have been an abuse of discretion? I do not buy nor endorse Husband's argument that the trial judge was limited to a figure of $201 for maintenance. There can be no quarrel that the court could have decreed an amount in excess of the stated reasonable needs of $201. Even though no findings were requested, neither this court, nor any court exercising appellate review, should be left without an option to question or have the trial court justify a substantial award beyond the evidence. Although the majority's intent here is "to achieve a just result in light of all the relevant consider-ations," it will have the effect, without recitation of the trial judge's findings and conclusions, of making appellate review meaningless and a mere rubber-stamping of the end amount the trial court found reasonable. Any remedy to then rectify the effects of this well-meaning effort will be a later motion to modify brought by the appellant. I would reverse and remand this judgment to the trial court to make findings supporting a maintenance award of up to $900 as being reasonable.