In the
 Missouri Court of Appeals
 Western District
 ELIZABETH ANN JANET, )
 )
 Respondent, ) WD84412
 )
 v. ) OPINION FILED: November 30, 2021
 )
 ROBERT MICHAEL JANET, )
 )
 Appellant. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Kevin D. Harrell, Judge

Before Division Three: Lisa White Hardwick, Presiding Judge, Gary D. Witt, Judge and
 Edward R. Ardini, Jr., Judge

 Robert Michael Janet ("Husband") appeals from the judgment of the Circuit Court

of Jackson County, Missouri ("trial court") dissolving his marriage to Elizabeth Ann Janet

("Wife"). On appeal, Husband argues that the trial court erred in: (1) awarding non-

modifiable maintenance of "no less than $28,476 per month" for eighty-four months,

because Wife was not entitled to any maintenance; (2) making the maintenance award non-

modifiable, because future events pertinent to maintenance are uncertain; (3) including

Husband's income in the award of maintenance because inclusion of income in
maintenance constitutes "double dipping" as Wife was awarded a portion of the value of

the stock of the company that employs Husband; (4) using December 31, 2019, as the

valuation date of the parties' marital assets and debts, because those values were stale at

the time of the distribution; and (5) determining the value of the marital assets and debts,

because the judgment contained "numerous mathematical errors and other substantial

errors" that resulted in an inequitable division of marital property. We affirm in part,

reverse in part, and remand for further proceedings consistent with this opinion. Also,

Wife filed a motion with this Court to strike Husband's brief and dismiss this appeal. Wife's

motion is denied.

 Factual and Procedural Background

 We review all facts and evidence in the light most favorable to the trial court's

decision. In re Marriage of Wood, 262 S.W.3d 267, 270 (Mo. App. S.D. 2008). Husband

and Wife married in December, 1992, in Cape Girardeau, Missouri. At that time, Husband

owned and managed two businesses, Auto Tire & Parts, Inc., and Cape Electrical Supply.

Husband had a profit-sharing plan through Auto Tire & Parts, Inc., that he maintained as

his separate property throughout the marriage. After Husband and Wife married, by the

agreement of the parties, Wife stayed home to raise the parties' children. Husband went to

work for Wife's family's company, Dutch Enterprises, which Wife's grandfather started in

the 1950's.

 In 1996, Husband and Wife purchased 83 shares of Dutch Enterprises stock from a

fellow employee and another 123 shares from Wife's father. The certificates are dated

April 30, 1996, and list "Robert M. Janet and Elizabeth A. Janet, his wife" as owners. At

 2
some point, however, the shares were transferred to Robert M. Janet, Trustee of the Robert

M. Janet Revocable Trust U/T/A February 19, 1999. One of the replacement stock

certificates bears Wife's signature, although she testified she did not remember signing it.

Husband testified that the parties put the shares in his trust for estate planning purposes and

put other assets in Wife's trust, which was depleted during the marriage. Husband owns

forty-six percent of Dutch Enterprises, and Wife's brother owns forty-four percent, and

another employee owns ten percent. Husband's expert at trial testified that Husband's

interest in Dutch Enterprises was worth $650,000 as of April 30, 2020, but Husband

testified he wouldn't sell his interest in the company for less than $7,000,000. Wife's expert

testified that the value of Husband's interest in Dutch Enterprises was $1,547,000 as of

December 31, 2019. Husband and Wife also owned a one-half interest in the building

Dutch Enterprises occupied which had once been appraised at $595,000, but Wife testified

that it had subsequently been appraised at $675,000 or $685,000.

 Husband and Wife owned their marital home in Cape Girardeau, Missouri, which

sold shortly before trial for $619,172.07. They also owned a house in Kansas City, where

Wife and one of their daughters were living. Wife valued that house at $243,528, which

was the value placed on the home by the Jackson County Tax Assessor, but Husband valued

the Kansas City house at $350,000 based on his own assessment. Husband and Wife owned

various other assets including a fifty percent interest in a lake house in Kentucky, a Sea

Ray 250 XLS with trailer, a Sea Doo with trailer, an Infinity QX80 sedan, several bank

accounts, a 401(k) account, and a life insurance policy.

 3
 At trial, Wife testified that, although she had a college degree in business marketing

and finance, she had not worked in nearly twenty-nine years, when she left her job to stay

home with the children.1 Wife also testified that she had numerous health issues that

prevent her from working. Wife testified that she had rheumatoid arthritis, an autoimmune

condition, that affected her joints and connective tissues and progressed with age. Wife

has had: both hips replaced; surgery on both of her feet; a meniscus repair; laparoscopic

surgery on her knees; plantar fasciitis; L4 and L5 herniated discs; stress fractures; gluteus

maximus tears; and flat foot syndrome. At the time of trial, Wife needed either a partial

knee replacement within the next year or a total knee replacement within the next two

years. Wife was fifty-seven years old at the time of trial.

 Wife testified as to her living expenses. Wife testified that she still had most of the

same $16,395 in monthly expenses that she had listed on her income and expense statement

that she provided for her pendant lite hearing, except that she no longer had rent or

mortgage for her house in Kansas City. Wife did testify about new expenses that were not

reflected on her statement, however. Wife testified that she would have health insurance

expense of over $1200 per month, and she testified that she would have more out-of-pocket

healthcare expenses since she was losing her Health Savings Account ("HSA"). Wife also

testified that she had personal property tax on her vehicle that was not reflected in her

income and expense statement of between $4,000 and $5,000 per year. Wife also testified

that her food costs had increased since her statement because she had to eat fresh, organic

 1
 The children are emancipated and not subject to this action.

 4
food for her health conditions. But even rounding up, based on the evidence, her trial

counsel's estimate of her monthly expenses was, at most, $20,300 per month. Wife had

been awarded $9,363 per month in temporary maintenance, and at trial she testified that,

during the time she was receiving that amount, she had had to borrow $41,000 from one of

her daughters for attorney fees and $16,927 for living expenses. Wife repeatedly testified

that she believed her maintenance should be a percentage of Husband's income—she

requested twenty-five percent of the difference between her and Husband's W-2 income;

fifty percent of Husband's K-1 income, because it was from her family's company; and

twenty-five percent of his other income, including rent on the Dutch Enterprises building.

The trial court found that Husband's W-2 income averaged over seven years was $196,214

per year and the seven-year average of Husband's K-1 income was $546,076 per year.

Therefore, Husband's average monthly income was approximately $61,858.

 The trial court issued its judgment on November 24, 2020. The judgment

acknowledged the preference for using a valuation date of marital property as the date of

the trial, but also stated that, due to Covid-19 and its effects, circumstances of the trial date

were not typical of the property during the twenty-nine-year marriage and were therefore

not representative of the true value of the property; therefore, the trial court chose to

exercise its discretion to use December 31, 2019, as the valuation date for the marital

property.

 The court then divided the marital property between Husband and Wife, awarding

Husband the interest in Dutch Enterprises, valued at $1,547,000, the parties' interest in the

 5
Dutch Enterprises building, valued at $396,627,2 the interest in the lake house in Kentucky,

valued at $159,000, a bank account valued at $80,209, boats and trailers valued at $84,400,

and a Ford F-150 truck that was valued at $24,100.3 The trial court awarded Wife the

Kansas City home, which it valued at $211,209, the equity in the recently sold Cape

Girardeau home, which was $619,172, bank accounts valued at $8,751, and Wife's vehicle,

which neither party offered any evidence of value. The trial court then awarded Wife a

cash equalization payment of $781,797.

 Finally, the trial court expressly considered Wife's twenty-eight years out of the

workforce, her age and extensive health issues, Husband's income, the family's standard of

living, and the property set aside to the parties, and awarded Wife non-modifiable

maintenance based upon Husband's income as follows: fifty percent of Husband's K-1

income with a minimum of $22,753 per month; thirty-five percent of Husband's W-2

income with a minimum of $5,723 per month; for a total of not less than $28,476 per month

for eighty-four months. Neither party requested written findings of fact and conclusions

of law pursuant to Rule 73.01(a).

 Husband filed a motion to amend the judgment, alleging several errors. The trial

court did not rule on the motion, and it was thus deemed denied by operation of law. This

timely appeal follows.

 2
 The judgment states that Husband, Wife, and Wife's brother each owned a one-third interest in the
building. At trial, the evidence was that Husband and Wife owned a one-half interest in the building, and Wife's
brother owned a one-half interest in the building.
 3
 The court found that this truck was owned by Dutch Enterprises, so it valued Husband's interest in the
truck at $24,100, which is roughly forty-six percent of the value of the truck, which was $52,390. The truck's value,
however, was already accounted for in the value of the Dutch Enterprises stock. This is discussed in greater detail
later in this opinion.

 6
 Standard of Review

 The standard for reviewing a decree of dissolution is the same as for any other court-

tried action. In re Marriage of Michel, 142 S.W.3d 912, 917 (Mo. App. S.D. 2004). "The

decree must be affirmed unless it is unsupported by substantial evidence, it is against the

weight of the evidence, or it erroneously declares or applies the law." Id. (citing Murphy

v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). The trial court has broad discretion in

valuing and distributing marital property and in determining and awarding maintenance.

Hammer v. Hammer, 139 S.W.3d 239, 240 (Mo. App. W.D. 2004); Fike v. Fike, 509

S.W.3d 787, 795 (Mo. App. E.D. 2016); Tarneja v. Tarneja, 164 S.W.3d 555, 559 (Mo.

App. S.D. 2005). "We do not retry the case, rather we accept as true the evidence and

reasonable inferences therefrom in the light most favorable to the prevailing party and

disregard contradictory evidence." McCallum v. McCallum, 128 S.W.3d 62, 65 (Mo. App.

E.D. 2003). "Additionally, we defer to the trial court's determinations of credibility in

making our review." Tarneja, 164 S.W.3d at 558.

Trial Court's Award of Maintenance

 Husband's first point on appeal is that the trial court erred in awarding Wife

maintenance because Wife was not entitled to any maintenance in that she did not meet her

burden under section 452.335.1,4 and because the trial court did not make any findings as

to Wife's reasonable needs or to Husband's ability to pay. We begin by pointing out that

Husband's point on appeal is multifarious in that it alleges multiple errors within the single

 4
 All statutory references are to the Revised Statutes of Missouri (2016) as currently updated by
supplement.

 7
point.5 As such, Husband's first point on appeal does not comply with Rule 84.04, leaves

nothing for review, and is subject to dismissal. Fastnacht v. Ge, 488 S.W.3d 178, 184 (Mo.

App. W.D. 2016). However, we prefer to decide cases on the merits where we can readily

discern and separate the independent claims of error in the point relied on, and so we

exercise our discretion to address the merits of each claim which is in fact contained in the

point relied on. Cityview Real Estate Servs., LLC v. K.C. Auto Panel, Inc., 576 S.W.3d

187, 191 (Mo. App. W.D. 2019).

 Husband does not claim in this point that the maintenance awarded was excessive

or improperly calculated, but instead argues that Wife was entitled to no maintenance

whatsoever because she failed to meet her burden under section 452.335.1. "Husband, who

contends the circuit court erred in awarding any maintenance to [W]ife, bears the burden

of proving the maintenance award 'shocks' this court's sense of justice." Tarneja, 164

S.W.3d at 565 (internal quotation omitted). The purpose of maintenance is to close the

gap between the income of the spouse seeking maintenance and that spouse's reasonable

monthly expenses. Id. at 564 (emphasis added). In determining whether a spouse is

entitled to an award of maintenance, the trial court must find that: (1) the spouse seeking

maintenance lacks sufficient property, including marital property apportioned to her, to

provide for her reasonable needs; and (2) whether the spouse seeking maintenance is unable

to support herself through appropriate employment. Section 452.335.1. While the trial

court must consider marital property apportioned to a receiving spouse, including the

 5
 The argument section of Husband's brief argues even more issues and alleged errors, but we will confine
our opinion to the issues raised in his points relied on as those are the only issues properly before us. Rule 84.04(e);
Sparks v. Sparks, 417 S.W.3d 269, 282 (Mo. App. W.D. 2013).

 8
interest the spouse could earn from her share of the marital property, she is not required to

deplete her apportioned share of the marital property before being entitled to maintenance.

Tarjena, 164 S.W.3d at 565.

 In this case, the trial court's judgment could have more clearly addressed the factors

in section 452.335.1. However, neither party requested findings of fact and conclusions of

law on the issue of maintenance pursuant to Rule 73.01(c), which provides:

 The court may, or if requested by a party shall, include in the opinion findings
 on the controverted fact issues specified by the party. Any request for an
 opinion or findings of fact shall be made on the record before the introduction
 of evidence at trial or at such later time as the court may allow. All fact
 issues upon which no specific findings are made shall be considered as
 having been found with the result reached.

Wife did present evidence relating to her reasonable needs. She testified as to her income

and expense statement that she completed and filed with the court as part of her pendente

lite maintenance hearing, and she testified as to items from the statement that were either

no longer expenses, or that were expenses that were new or were not included on the

previous statement. The statement was relied upon extensively at trial. "To prove

expenses, statements of income and expenses are routinely admitted and relied upon

without any further testimony or documentary support for each individual item." Arndt v.

Arndt, 519 S.W.3d 890, 899 (Mo. App. E.D. 2017). And although Husband argues that

Wife had sufficient property apportioned to her to provide for her needs, he presented no

evidence of how much income Wife's property could generate or even a reasonable method

for the trial court to have calculated potential income. Several of the assets awarded to

Wife, such as the Kansas City home and her automobile, are non-income-generating assets.

 9
The trial court did expressly find that Wife's long absence from the workplace would make

it difficult for her to find gainful employment, and Wife testified extensively about her age

and her significant health related issues, including the upcoming need for a knee

replacement and the progressive nature of her rheumatoid arthritis. The trial court noted

that the evidence established the parties had enjoyed a lavish lifestyle during the marriage

and that Wife's long absence from the work force was by agreement of the parties so she

could raise their children. The trial court noted that Husband was aware of Wife's spending

during the marriage and acquiesced to it as well as acknowledged his own extensive

spending during the marriage. The trial court noted that beyond the assets awarded to her

in the dissolution, Wife had no financial resources or identifiable stream of income.

Accordingly, there is sufficient substantial evidence to support the trial court's finding that

Wife required maintenance in order to meet her reasonable needs because she lacked

sufficient property to provide for herself and because she would be unable to support

herself through employment. See In re Marriage of Lawry, 883 S.W.2d 84, 89 n.4 (where

parties did not request findings pursuant to Rule 73.01, "the trial court is presumed to have

found that Wife lacked sufficient property to provide for her reasonable needs and was

unable to support herself through appropriate employment.").

 Husband's final alleged error in his first point on appeal is that the trial court failed

to consider his ability to pay maintenance. The trial court's judgment expressly considered

Husband's ability to pay maintenance and noted the evidence presented by Wife as to

Husband's income, in the form of W-2 wages from his employment at and K-1 income

from Dutch Enterprises and found that Dutch Enterprises had retained more cash than usual

 10
for the last two years so as possibly to deflate Husband's income for purposes of the

dissolution. The trial court's determination of Husband's income, between W-2 and K-1

income averages out over the past seven years to be approximately $61,858 per month. A

trial court may consider Husband's past and future earning capacity when the evidence

shows that Husband's income is temporarily lower than usual and the court concludes that

Husband has the potential to earn far more than he is earning at the time of trial. In re

Marriage of Clark, 801 S.W.2d 496, 499 (Mo. App. E.D. 1990). The Janets' tax returns

were provided to the court, which evidenced Husband's income. Again, Husband did not

request findings as to this issue pursuant to Rule 73.01(a)(3), so we presume that the trial

court's findings were in accordance with its judgment that Husband had the ability to pay

Wife maintenance as long as that conclusion is supported by substantial evidence, which it

is.

 Husband's first point on appeal is denied.

Non-Modifiability of Maintenance Award

 Husband's second point on appeal is that the trial court erred in making the award

of maintenance non-modifiable because future events relating to the appropriateness of

maintenance are uncertain. We agree. Although trial courts have broad discretion in

awarding maintenance, section 452.335 "does not bestow unfettered discretion on the trial

court." In re Marriage of Otis, 479 S.W.3d 142, 146 (Mo. App. S.D. 2015). A non-

modifiable order of maintenance must be justified by the facts and circumstances of the

particular case. Id. Where future events that may affect the issue of maintenance are

uncertain, the maintenance should be modifiable. Id.

 11
 Here, there is evidence that Wife's health issues have caused her difficulties most of

her adult life, and Wife testified that her disease is likely to progress as she ages. In

addition, the trial court's judgment based its maintenance award, in part, on its conclusion

that Wife's age and her twenty-eight-year absence from the workplace would make it

difficult for her to support herself with gainful employment. However, there was no

evidence of any possible, let alone likely, change in circumstances, or that she would

receive additional income, or that her expenses would abate at the end of eighty-four

months. See Haynes v. Almuttar, 25 S.W.3d 667, 673 (Mo. App. W.D. 2000) ("Absent

substantial evidence of an impending change in the spouse's financial condition, 'the trial

court must award maintenance for an unlimited duration with the award being subject to

modification when and if the spouse's financial condition improves.'"). We also note, that

the trial court failed to include a provision abating the maintenance award in the event of

Wife's remarriage or other future events that might alter her need for support. Michel, 142

S.W.3d at 926. We find under the facts of this case that the trial court abused its discretion

in ordering nonmodifiable maintenance and for terminating maintenance at eighty-four

months. For this reason, the maintenance award to Wife should have been modifiable both

as to amount and duration. Husband's Point II is granted.

Tying Maintenance Award to Husband's Income from Stock

 Husband's third point on appeal is that the trial court erred in including Husband's

K1 income from the Dutch Enterprises stock. The maintenance award in Wife's favor

 12
includes "50% of [Husband's] K1 income as maintenance with the amount never being less

than 50% of [Husband's] seven (7) year average of K1 income or $22,753 per month."6

Husband argues that an award of maintenance based upon the income Husband earns from

the Dutch Enterprises stock is improper "double-dipping" because the Dutch Enterprises

stock was determined to be marital property, and Wife was consequently given credit for

the value of the stock as part of her apportionment of marital property. Husband presented

no evidence and makes no argument that the income he receives from his stock diminishes

the value of the marital property he was awarded.7 Husband only cites out-of-state cases

to support his position, which are not binding authority for this court. While we agree with

Wife that "decisions of other state courts are not binding on us,” Doe v. Roman Catholic

Diocese of St. Louis, 311 S.W.3d 818, 823 (Mo. App. E.D. 2010), we also note that

Husband's K1 income is in no way related to Wife's reasonable needs (other than as one

indication of the standard of living established during the marriage) but is directly related

to his ability to pay maintenance.

 As stated above, the purpose of a maintenance award is to help the receiving spouse

meet her reasonable needs. Hammer, 139 S.W.3d at 241. While the trial court has broad

discretion under the statute to formulate an award of maintenance and can consider any

 6
 Husband does not challenge the use of a percentage of this annual source of income but only challenges
whether this source of income can be used for determining the amount of maintenance. The judgment's maintenance
award also includes a percentage of Husband's W-2 income. Husband does not challenge this provision of the
judgment.
 7
 Income from stock or other investment assets can be treated as income when figuring either the need for
maintenance or the ability to pay maintenance. However, if income producing property has been reduced to present
value based on its future income production and awarded to one or both parties in the division of marital property, it
should not also be used to calculate the parties' income. See Richardson v. Richardson, 564 S.W.3d 711, 719-20
(Mo. App. W.D. 2018).

 13
relevant factor including the standard of living established during the marriage, the duration

of the marriage, and the conduct of the parties during the marriage, those factors do not

support the amount of the trial court's award of maintenance. Wife testified that she

believed she should receive a percentage of Husband's income as maintenance due to their

standard of living during the marriage and because the source of much of Husband's income

is the company that her grandfather started and that has been in her family since the 1950s.8

Affording Wife's testimony as to her reasonable needs the most generous acceptance,

which the judgment does, and which we must, therefore do on appeal, her maintenance

award still must be based upon her reasonable needs. As pointed out above, Wife's

evidence supported that her monthly expenses were, at most, $20,300 per month, but the

minimum maintenance awarded under the judgment was $28,476 per month and the

judgment provided that the amount would increase in any year, following a year that

Husband's total income increased. Further, the evidence did not support a "floating" award

of maintenance that would fluctuate based on any increase in Husband's income.9 For these

reasons, Husband's Point III is granted, and the award of maintenance is reversed to the

extent it exceeds Wife's reasonable needs.

Valuation of Marital Assets

 8
 Had the trial court considered that Dutch Enterprises was Wife's family's company, and therefore that the
equitable distribution of the value of this asset should inure more to Wife, that would have been within the trial
court's discretion, as Section 452.335.2(10) expressly allows the trial court to consider any relevant factor.
 9
 This should not be read to foreclose an argument in the future that an award of maintenance can be
variable under appropriate facts, such as where the reasonable needs of a spouse receiving maintenance exceed the
other spouse's ability to pay, but the evidence indicates the paying spouse's income is sufficiently certain and
calculable to have significant increases or decreases in the future which would directly impact the ability to pay an
amount of maintenance commensurate with the recipient spouse's reasonable needs.

 14
 Husband's fourth point on appeal is that the trial court erred in using December 31,

2019, as the valuation date for certain marital assets because the valuations on that date

had become stale by the date of trial. Husband does not allege which marital assets he

believes to be wrongly valued or what he believes the more accurate values to be, nor does

he provide specific citation to the record that supports his allegedly more accurate

valuation. The factual section of Husband's brief cites to several of his trial exhibits, but

many of these do not support his claims, and they are not mentioned in his argument

supporting this point relied on. See Michel, 142 S.W.3d at 927 ("Husband's argument does

not cite to any portion of the record demonstrating" his claims). As with the other aspects

of dissolution cases, the trial court has broad discretion as to the valuation of marital assets.

Tarneja, 164 S.W.3d at 559. Therefore, "a trial court is prohibited from entering a

valuation of marital property not supported by any evidence at trial," In re Marriage of

Kirkham, 975 S.W.2d 500, 505 (Mo. App. S.D. 1998), but "[w]hen the trial court's

valuation of property is within the range of conflicting evidence of value offered at trial,

the court acts within its discretion to resolve conflicts in evidence." Taylor v. Taylor, 25

S.W.3d 634, 644 (Mo. App. W.D. 2000).

 Husband is correct that "the [v]aluation of property should be reasonably proximate

to the date the division is to be effective." Smith v. Smith, 985 S.W.2d 836, 841 (Mo. App.

W.D. 1998). In most cases, the proper date for valuation of marital property is the date of

trial. McCallum, 128 S.W.3d at 66. However, if the date of valuation or the date of trial

is not reasonably proximate to the date of distribution, another hearing should normally be

held to determine the current value of the property. Smith, 985 S.W.2d at 841. This is

 15
especially so if the nature of the property indicates that its value may be volatile.

McCallum, 128 S.W.3d at 67. However, if a trial court believes that a valuation of a marital

asset at the time of trial does not accurately reflect its value, it can use another valuation

within the range of conflicting evidence offered at trial. Tarneja, 164 S.W.3d at 562-64.

 In this case, the trial court used a valuation date for marital property of December

31, 2019. At trial, Husband offered valuations for at least some marital assets calculated

as of April 2020. The trial court rejected this valuation date because it found the downward

fluctuations in asset values as of April 2020, a critical time of uncertainty in the Covid-19

pandemic, to be atypical. Husband does not show or even argue that the trial court was

incorrect and that the valuations as of April 2020 remain more accurate, or even that they

were more accurate as of the date the trial court entered its judgment in November of 2020.

We believe the trial court acted within its discretion in arriving at its valuations of the

various items of marital property, which were supported by substantial evidence.

Husband's Point IV is denied.

Mathematical and other Substantial Errors

 Husband's final point on appeal is that the trial court's judgment contained

"numerous mathematical errors and other substantial errors" that "resulted in an unfair and

inequitable division of marital property and an erroneous equalization payment." Again,

this point is multifarious as it alleges a litany of errors within a single point relied on.

Fastnact, 488 S.W.3d at 184. The pages of argument that follow Husband's Point Relied

on V illustrate why the Missouri Supreme Court Rules disallow multifarious points relied

on. The argument in Husband's Point V is largely a rehashing of his argument in Point IV

 16
that the trial court erred in valuing marital assets because it used the wrong valuation date.

It then compounds that argument by aggregating the alleged erroneous valuation of the

marital assets he argues were made to claim that the total value of the marital assets is

incorrect, and thus the amount of the equalization payment awarded to Wife is incorrect.

Husband's brief then goes on for pages without a single citation to authority, alleging

numerous errors including that the judgment erroneously found that post-separation debt

was marital debt—again, without a single citation to legal authority. In actuality, this court

has found that post-separation debts incurred before a decree of separation or divorce are

marital debts. Wansing v. Wansing, 277 S.W.3d 760, 770 (Mo. App. S.D. 2009).

 Next, the argument supporting Point V complains that the apportionment of marital

property was not equal. But the trial court is not required to distribute marital property

equally, only equitably according to the circumstances in each case. Michel, 142 S.W.3d

at 922. "We presume the trial court's division is correct and the party challenging it bears

the burden of overcoming that presumption." Id. The trial court already found in this case

that Husband had much greater earning potential due to Wife's long absence from the

workforce while she performed her duties as a homemaker, and the court noted that

Husband's assets and income had chiefly come from his employment at Wife's family

company and his status as a shareholder in that company. Therefore, the trial court would

have been within its discretion to have apportioned a larger share of the marital property to

Wife.

 Then Point V argues that, while the trial court properly determined Husband's pre-

marital brokerage account to be his separate property and apportioned that property to him,

 17
"it is impossible to determine from the Judgment whether the trial court included any

portion of this non-marital property in its calculation/division of marital property, which

would be prejudicial" to Husband. This speculative non-allegation of error is insufficient

to serve as a basis upon which to reverse a judgment. Nor are the paragraphs alleging

language in the judgment that had no effect on the distribution of marital property or the

award of maintenance but hurt Husband's feelings or offended him grounds to reverse the

judgment.

 Of the numerous remaining allegations of error that Husband raises in this single

point on appeal, we will address two points that have merit. First, all of the evidence

provided at trial supported a finding that the Ford F-150 truck that Husband drove belonged

to Dutch Enterprises. Therefore, the truck and its value should not have been "awarded"

to Husband as part of the judgment. The value of the truck would have been included in

the value of Dutch Enterprises, and Husband was already awarded his forty-percent interest

in Dutch Enterprises in the dissolution. Accordingly, on remand, the trial court should

consider that the Ford F-150 is already included in the valuation of the marital asset of

Dutch Enterprises and therefore was already accounted for and the use of that value again

constituted a double calculation of a portion of a single asset. If the trial court then

concludes that equity requires the distribution of property to be amended to reflect this

correction, it should exercise its discretion to so amend the distribution of marital property,

likely in the form of modifying the equalization payment. Second, the judgment recites

that the Dutch Enterprises building was owned one-third by Husband, one-third by Wife,

and one-third by Wife's brother. The evidence was that Husband and Wife shared a one-

 18
half interest in the building, and Wife's brother owned the other half. This correction

should be made by the trial court. We note that the trial court's division of marital property

may or may not change with these alterations as the trial court, in its discretion, considers

the equities of the circumstances. Accordingly, Husband's Point V is denied in part and

granted in part.

 Conclusion

 For all of the above-stated reasons, the judgment of the trial court is affirmed in part

and reversed in part and remanded for further proceedings. On remand, the trial court is

instructed to re-calculate the values of marital property considering the F-150 truck as part

of the assets of Dutch Enterprises and the Dutch Enterprises building as fifty percent

belonging to Husband and Wife and fifty percent as belonging to Wife's brother and

determine what, if any, modifications are appropriate to the distribution of marital assets

based on those changes. The trial court is also directed to recalculate Wife's award of

maintenance in an amount not to exceed her reasonable needs as supported by the evidence

and to make the amount of the award modifiable, and the court is directed to eliminate the

limitation on the duration of the maintenance award so that the duration of the maintenance

award is indefinite. Wife's motion to strike Husband's brief and to dismiss this appeal is

denied.

 __________________________________
 Gary D. Witt, Judge
All concur

 19