In re the Marriage of Rhonda
L. MICHEL and Chester
R. Michel.

Rhonda L. Michel, Petitioner–
Respondent,

v.

Chester R. Michel, Respondent–
Appellant.

No. 25785.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 13, 2004.

Christena Silvy Coleman, West plains, for Appellant.

No Appearance for Respondent.

Before BARNEY, P.J., PREWITT, J., and GARRISON, J.

PER CURIAM.

Chester R. Michel ("Husband") appeals the amended judgment which dissolved his marriage to Rhonda L. Michel ("Wife"). Husband and Wife were married on June 20, 1987 and separated on January 16, 2000.[1] Wife filed a petition for dissolution of marriage on March 20, 2000. An "Order and Judgment on Temporary Motions" was entered on May 17, 2000, which provided for, among other things, maintenance payments from Husband to Wife in the amount of $800 per month. After hearing evidence on November 29, 2000, the trial court dissolved the parties' marriage and withheld its ruling on the division of property and debts, maintenance, and several other matters until a later date. Wife filed a motion for contempt on January 25, 2001, alleging that Husband willfully failed to comply with the trial court's temporary order. Subsequently, a hearing was held on April 4, 2001 and the trial court entered its judgment on September 28, 2001. Husband filed a "Motion for New Trial and/or Reconsideration, Motion to Set Aside, or in the Alternative a Request for Specific Findings of Fact and Conclusions of Law or an Amended Judgment." After a hearing on January 8, 2002, the trial court denied Husband's motion.

Husband's initial appeal in this case was dismissed "because (1) the judgment [did] not divide all marital debts as mandated by § 452.330.1, and (2) there [was] no showing the contempt order had been enforced or that Husband had purged himself of contempt." *Michel v. Michel*, 94 S.W.3d 485, 486–87 (Mo.App. S.D.2003). This court further stated that the trial court "may wish to consider additional evidence." *Id.* at 489. The mandate from this court was filed on February 13, 2003, and the trial court entered an amended judgment on July 3, 2003 without hearing additional evidence. This appeal followed.

## STANDARD OF REVIEW

The standard for reviewing a decree of dissolution is the same for reviewing any court-tried action. *Bullard v. Bullard*, 929 S.W.2d 942, 944 (Mo.App. E.D. 1996). The decree must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[2] An abuse of

---

1. There were no children born of the marriage.

2. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule

discretion occurs when a trial court's ruling is clearly against the logic of the circumstances and is sufficiently arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Wright v. Wright,* 1 S.W.3d 52, 57 (Mo.App. W.D.1999). If reasonable minds can differ about the propriety of the trial court's ruling, there was no abuse of discretion. *Hatchette v. Hatchette,* 57 S.W.3d 884, 888 (Mo.App. W.D.2001). In making our review, the evidence is viewed in the light most favorable to the decree. *In re Marriage of Lawry,* 883 S.W.2d 84, 86–87 (Mo.App. S.D.1994).

## FAILURE TO CONSIDER ADDITIONAL EVIDENCE AND ADOPTION OF WIFE'S PROPOSED DECREE

■ One of Husband's points on appeal alleges that the amended judgment was against the weight of the evidence, because the trial court erred in failing to consider additional evidence on remand as authorized by this court. Further, he argues that he was not provided notice that the trial court was going to adopt Wife's proposed decree and her suggested valuations of the parties' property.

In its opinion dismissing Husband's prior appeal for lack of a final judgment, this court stated that "[b]ecause either party will then have the right to appeal the trial court's new judgment, the trial court *may* wish to consider additional evidence." *Michel,* 94 S.W.3d at 489 (emphasis added). On remand, the trial court chose not to consider any additional evidence and instead entered an amended judgment.

■ Husband "cites no authority for the premise that the trial court *must* take additional evidence or argument upon remand." *Young v. Young,* 59 S.W.3d 23, 29 (Mo.App. W.D.2001) (emphasis added).

Likewise, he does not explain the absence of relevant authority. A point of error left unsupported by citation of relevant authority need not be considered. *Thomas v. Lloyd,* 17 S.W.3d 177, 190 (Mo.App. S.D. 2000). Therefore, we need not consider this portion of Husband's argument.

Husband additionally argues in this point that the trial court erred in "[a]dopting the amended judgment prepared and submitted by [Wife's] counsel without notice to [Husband] which contained all of the values assigned by [Wife][.]"

Husband's argument that he lacked notice seems to be an assertion that he has the right to approve the decree before the court signs it. It has specifically been held that once a case has been finally submitted to the trial court or taken under advisement, no notice is necessary to the parties prior to entry of judgment. *Smith v. Smith,* 683 S.W.2d 651, 652 (Mo.App. W.D.1984). This court refuses to hold otherwise in this situation. *See Roberts v. Roberts,* 800 S.W.2d 91, 93 (Mo.App. W.D. 1990).

■ Further, the trial court's adoption of a proposed decree or findings of facts and conclusions of law submitted by the opposing party is not per se erroneous. *Ikonomou v. Ikonomou,* 776 S.W.2d 868, 873 (Mo.App. E.D.1989); *Stelling v. Stelling,* 769 S.W.2d 450, 452 (Mo.App. W.D. 1989). "[T]he trial court should critically examine the parties' submissions and employ only those portions of them that accurately describe the court's judgment." *Stelling,* 769 S.W.2d at 452. The decree should reflect the "necessary judicial consideration and polish" expected in such a document. *Kreitz v. Kreitz,* 750 S.W.2d 681, 684 (Mo.App. E.D.1988).

84.13(d), Missouri Rules of Civil Procedure (2004).

We are unable to make a determination regarding whether the trial court's reliance on Wife's proposed decree was erroneous, because Husband has failed to include Wife's proposed decree in the record on appeal. It was Husband's duty as Appellant "to present a record that contains 'all the evidence necessary for our making determinations in the issues raised.'" *Gossett v. Gossett*, 98 S.W.3d 899, 900 (Mo.App. W.D.2003) (quoting *State ex. rel. Callahan v. Collins*, 978 S.W.2d 471, 474 (Mo.App. W.D.1998)). "This includes the duty to furnish a transcript containing all the records, proceedings, and evidence relating thereto." *Id.* at 900–01. Due to Husband's failure to provide this court with a copy of Wife's proposed findings, we have no way of determining whether the trial court committed error in the manner argued by Husband.

Additionally, valuation of property in a dissolution decree must be supported by evidence at trial. *Stuckmeyer v. Stuckmeyer*, 117 S.W.3d 687, 692 (Mo.App. E.D.2003). In this matter, both sides presented expert testimony regarding the value of the two tracts of real estate at issue. As for the marital home, the witnesses valued it at between $73,000 and $98,000 and the trial court valued it at $90,000. Commercial property, located in downtown Willow Springs, was given a total value of between $54,100 and $78,500 by the expert witnesses at trial and the trial court valued it at $57,699.50. We note that the trial court is entitled to believe or disbelieve testimony concerning the valuation of marital property. *Taylor v. Taylor*, 25 S.W.3d 634, 645 (Mo.App. W.D.2000). Given that "[v]alue is a determination of fact by the trial court, to which we give great deference," we find that the trial court's valuation of the marital property was supported by sufficient evidence at trial. *See Thill v. Thill*, 26 S.W.3d 199, 203 (Mo.App. W.D. 2000).

FAILURE OF TRIAL COURT TO CLASSIFY HUSBAND'S PENSION PLAN; REQUIREMENT THAT WIFE BE NAMED AS BENEFICIARY TO HUSBAND'S PENSION PLAN; AND, REQUIREMENT THAT HUSBAND PROVIDE INSURANCE

Another of Husband's points asserts that the trial court failed to delineate whether his pension plan was marital or separate property. He further argues that even though the trial court did not set aside his pension as marital property, the trial court erroneously required that he name Wife as a survivor beneficiary under the plan. Additionally, he alleges the trial court erred in requiring him to provide insurance for Wife under the pension plan.[3]

At trial, there was evidence regarding a retirement pension plan that Husband acquired while working for the Federal Aviation Administration ("FAA"). While the record indicates that at the time of their marriage Husband was already retired from the FAA and that he did not thereafter work for that organization, we note that Wife testified that Husband made payments into "a retirement account" during the marriage. While the parties were married, they were covered by health in-

---

3. As Husband fails to make any argument regarding why the trial court erred in requiring Husband to name Wife as a beneficiary under the pension plan or in requiring Husband to provide Wife with health insurance, we deem those issues to be abandoned. Arguments raised in the points relied on which are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review. *Banks v. Village Enterprises, Inc.*, 32 S.W.3d 780, 795 (Mo. App. W.D.2000).

surance provided through the "Postman's Benefit Plan," which stemmed from Husband's employment with the FAA.[4]

In its amended judgment, the trial court found

that [Husband] has available insurance benefits and survivors benefits under a federally administered benefit plan. [Husband] is ordered to enroll [Wife] under said plan immediately and at all times hereafter to provide insurance to [Wife] under said plan or a similar plan approved by [Wife] in writing. [Husband] shall at all times provide [Wife] with an enrollment "card" or other proof of insurance and otherwise assist her in filing claims etc.

[Husband] shall also immediately enroll [Wife] as a surviving spouse or such other survivorship provision under his federal retirement plan and provide proof of same to her and shall at all times hereinafter maintain such enrollment.

The only other mention of Husband's pension plan is found in the section of the amended judgment dealing with maintenance: "[Husband] ha[s] additional income from air traffic control retirement of One Thousand Nine Hundred dollars ($1,900.00) per month or Twenty-three Thousand dollars ($23,000.00) per year."

Under the Dissolution of Marriage Act, the division of marital property is left to the sound discretion of the trial court, and its decision will be upheld unless an abuse of discretion is shown. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo. banc 1983). Appellate courts will only interfere with the division "if the division is so heavily and unduly weighted in favor of one party so as to amount to an abuse of discretion." *Nelson v. Nelson,* 25 S.W.3d 511, 516 (Mo.App. W.D.2000). The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption. *Conrad v. Conrad,* 76 S.W.3d 305, 314 (Mo.App. W.D.2002).

Section 452.330, which governs the division of property in a dissolution proceeding, sets forth a two-step process that is to be followed by the trial court: (1) the court must first set aside to each spouse his or her non-marital property; and (2) then divide the marital property and debts in such proportions as the court deems just.[5] *See Ballard v. Ballard,* 77

---

4. The parties also had supplemental health insurance benefits through Husband's employment with the Division of Family Services ("DFS"); however, at the time of trial he was no longer employed by DFS.

5. Section 452.330 states in pertinent part:

1. In a proceeding for dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all

S.W.3d 112, 116 (Mo.App. W.D.2002). The trial court must make specific findings as to whether each asset or class of assets is marital property subject to division or non-marital property belonging to a spouse individually. *Taylor,* 25 S.W.3d at 641. Such an identification of property is the necessary antecedent of a subsequent just division of marital property. *In re Marriage of Miller,* 806 S.W.2d 516, 517 (Mo. App. S.D.1991). An "[e]rror in classifying property is not necessarily prejudicial, however, unless it materially affects the merits of the action." *Farnsworth v. Farnsworth,* 108 S.W.3d 834, 839 (Mo.App. W.D.2003) (quoting *In re Marriage of Jennings,* 910 S.W.2d 760, 765 (Mo.App. S.D. 1995)).

While "[t]here may be instances where it is not error for a trial court to fail to expressly designate the parties' separate property and their marital property," this is not such a case. *Miller,* 806 S.W.2d at 517. Here, it is unclear from the record whether the pension plan at issue was treated as separate or marital property for purposes of the property division, because the trial court failed to specifically identify it in the amended judgment. Until a decision is made as to whether the pension plan is marital or separate property, this court can not adequately determine whether a just division of marital property has occurred. Our only recourse is to reverse and remand for the trial court to designate the pension plan in question as marital or nonmarital and, if marital, divide the marital property in accordance with Section 452.330. If it is determined to be nonmarital, the trial court should order it set aside to Husband. *See In re Marriage of Eck,* 904 S.W.2d 60, 61 (Mo.App. S.D.1995).

## PROPERTY DISTRIBUTION

■ In another point, Husband argues that the trial court erred "in failing to consider the substantial contribution of [Husband's] family toward the acquisition of the two tracts of real estate in which the parties have an interest where [Wife] acknowledged the contribution of [Husband's] family." He further contends that the trial court's finding that his family's contribution was a gift is against the weight of the evidence thereby making the division of marital property unjust and inappropriate.

At the time of trial the parties owned two tracts of real estate. The first tract of land consisted of the marital home and a small amount of land ("the marital home"). The second tract of land consisted of a

property acquired by either spouse subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

All references to statutes are to RSMo 2000 unless otherwise indicated.

commercial building located in downtown Willow Springs, Missouri ("the commercial property").

We begin with our consideration of the marital home which, the record reveals, was purchased on August 10, 1990. At the time of the home's acquisition, Husband's parents paid the entire down payment of $18,516.02 toward the purchase price of $66,500. Originally, the property was titled to Husband and Wife along with Husband's parents as "joint tenants with right of survivorship." According to Wife, Husband's parents were included in the ownership of the property "[b]ecause they loaned us $18,000 to complete the ownership of the property." She went on to state that she and Husband owed his parents "a debt" and even "made a few payments [ ] at $100 per month" toward the $18,000 indebtedness.

In 1999, when the property was refinanced, Husband's parents executed a quit claim deed conveying whatever interest they had in the property to Husband and Wife. The resulting deed of trust on the property was by Husband and Wife alone securing a note under which they owed $69,000 at the time of trial.

In the amended judgment, the trial court found "the value of the residence and garage to be Ninety Thousand dollars ($90,000.00). [Wife] is awarded all of the parties' interest therein, as well as the obligation to satisfy the debt on same." The court further found that "there was discussion at trial of a 'loan' from [Husband's] parents to purchase one of the tracts of real estate. The [c]ourt finds same to be a gift to both parties and not a marital debt."

■■■■ The trial court is vested with great flexibility in its division of marital property. *Woolridge v. Woolridge*, 915 S.W.2d 372, 376 (Mo.App. W.D.1996). There is no set formula concerning the weight given to the factors considered under Section 452.330. *Id.* The division need not be equal, but must be fair and equitable under the circumstances of the case. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). We presume that the trial court's division is correct and the party challenging it bears the burden of overcoming that presumption. *Knapp v. Knapp*, 874 S.W.2d 520, 524 (Mo.App. W.D.1994).

As the party alleging trial court error, Husband has the burden of proving the existence and amount of the debt. *In re Marriage of Swanson*, 904 S.W.2d 88, 92 (Mo.App. S.D.1995). The trial court was "not compelled to believe [the] testimony about the existence or amount of the alleged debt." *Id.* Whether or not the contributions made by Husband's parents were gifts or loans "was purely a question of fact, depending for the most part on the credibility of the witnesses." *Cole v. Cole*, 633 S.W.2d 263, 265 (Mo.App. W.D.1982).

Additionally, we find no support for Husband's argument that "[t]he trial court erred in failing to consider the substantial contribution of [Husband's] family toward the acquisition of the two tracts of real estate." Husband fails to cite and we fail to find that the trial court is under any obligation to make such a finding. With that being said, the trial court here clearly found that any such contribution by Husband's family was a gift to the marriage.

■■■■ Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Murphy*, 536 S.W.2d at 32. Under our standard of review and deferring to the trial court's assessment of credibility, we find that the trial court's order concerning Husband's claim that his

parents "loaned" money to he and Wife is not against the weight of the evidence. *See Robertson v. Robertson,* 15 S.W.3d 407, 411 (Mo.App. S.D.2000). There is sufficient substantial evidence to support the court's determination that the parties did not owe Husband's parents for a loan on the marital home.

As for the other tract of real estate at issue, the commercial property, it was purchased by Husband's parents in 1992 for $26,200. Following the death of Husband's father, the property was conveyed to Husband and Wife later that year. According to Wife, this was done by Husband's mother as part of her estate planning. She stated that "[o]riginally it was supposed to be part of [Husband's] inheritance." Shortly thereafter, in 1993, Husband and Wife conveyed "an undivided one-half" interest in the property to Phyllis K. Byouk, Husband's sister.

At trial, Wife acknowledged that she had used the commercial building for office space and that during that time she and Husband paid his mother $250 a month for approximately a year. She stated that she was unsure if the payments were for rent or if they were payments to Husband's parents on the $26,000 purchase price. When asked about her interest in the commercial property, Wife stated that she understood her interest to be "a one half undivided interest" and that if the court were to find that interest to be marital in nature, it would only be for half the value of property, because Husband's sister owned the other one half interest in the property. The trial court itself stated at trial that "[a]pparently this couple had an undivided one half interest in that property."

In its amended judgment, the trial court deemed the value of the commercial property to be "Fifty-seven Thousand Six Hundred Ninety-nine and 50/100 dollars ($57,699.50)." Thereafter, the trial court noted that the commercial property had "no debt encumbering it" and awarded Husband "all of the parties' interest therein."

At trial, there was expert testimony that the commercial property had a total value of between $54,100 and $78,500. Taking that into consideration, the trial court valued the property at $57,699.50. We find no fault in the trial court's valuation of the property.[6] However, the trial court granted Husband "all of the parties' interest herein," or a one half interest in the property given that Husband's sister had a one half interest in the real estate. Yet, the trial court set aside to Husband the full value of the real estate or $57,699.50. This was error. The trial court should have set aside to Husband the amount of $28,849.75 or one half of the total value of the property, which is an amount equal to the interest he was awarded.

Therefore, the portion of the judgment relating to the division of property is reversed and remanded to the trial court to set aside to Husband an amount that reflects his interest in the commercial property and accordingly reconsider the apportionment of the parties' separate and marital property as required by statute.

## AWARD OF NONMODIFIABLE MAINTENANCE

Another of Husband's points is directed at the trial court's award to Wife

---

**6.** We defer to the trial court to resolve any conflict in the evidence concerning the value of property. *Schelsky v. Schelsky,* 796 S.W.2d 888, 893 (Mo.App. E.D.1990). Further, the trial court is entitled to believe or disbelieve the testimony of either party and can disbelieve expert testimony. *In re Marriage of Smith,* 785 S.W.2d 764, 767 (Mo.App. E.D. 1990).

of nonmodifiable, non-terminable maintenance. First, Husband argues that the trial court erred in failing to include a termination date for Wife's maintenance in the amended judgment "because Section 452.335 mandates a termination date and the failure of the trial court to include one is an erroneous application of the law." Further, Husband attacks the amount of the maintenance award as being unreasonable in light of his ability to pay.

Although a trial court's decision regarding maintenance is presumed correct, a judgment on maintenance will be disturbed on appeal where it is improper under the standard of *Murphy v. Carron,* discussed earlier. *See Eck,* 904 S.W.2d at 62.

The determination of whether to award maintenance under Section 452.335.1 is a two-step procedure. *Crews v. Crews,* 949 S.W.2d 659, 666 (Mo.App. W.D.1997). In the first step, Section 452.335.1 requires the trial court to find that: (1) the party seeking maintenance lacks sufficient property to provide for his or her reasonable needs; and (2) the party seeking maintenance is unable to support himself or herself through appropriate employment. Once these findings are made, Section 452.335.2 requires that the trial court, in determining the amount and duration of its maintenance award, consider the ten factors enumerated in the statute.[7] Once both steps have been satisfied, the statute provides that maintenance should be awarded "in such amounts and for such periods of time as the court deems just." *In re Fuldner,* 41 S.W.3d 581, 587 (Mo. App. S.D.2001).

Here, in its amended judgment the trial court found under Section 452.335.1 that Wife was entitled to maintenance. Thereafter, based upon the evidence presented, the trial court made the following findings under Section 452.335.2:(1) Wife "does not have a child living with her," "has very limited financial resources" and "no cash assets or income"; (2) Wife "is in her early to mid fifties" and "suffers from a debilitating medical condition, Lupus, which renders her unable to be employed"; (3) Wife "has no income at this time," however, Husband "has significant income" and has been paying certain expenses for his girlfriend; (4) "the parties enjoyed a comfortable standard of living during the marriage" and "[w]ithout maintenance [Wife's] standard of living will decline drastically"; (5) Wife "will be awarded the marital home along with the debt thereon" and Husband

7. Section 452.335.2 states:
The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:
(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;
(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
(6) The duration of the marriage;
(7) The age, and the physical and emotional condition of the spouse seeking maintenance;
(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
(9) The conduct of the parties during the marriage; and
(10) Any other relevant factors.

"will be awarded the student loan debts" and "other debts"; (6) "the parties were married for sixteen (16) years"; (7) Wife's "physical condition is poor" and her "emotional state is somewhat depressed"; (8) Husband "has ample income and ability to satisfy a monthly maintenance payment"; (9) "[d]uring the marriage[,] [Husband], after [Wife] fell ill with Lupus, began an affair with a woman thirty-four (34) years his junior and by his own admission even paid her rent and was living with her at the time of the divorce"; and, (10) "[t]he Court considers as a relevant factor that [Husband], while paying Seventeen Hundred Fifty dollars ($1,750.00) per month in temporary maintenance to [Wife] as ordered ... was also able to pay Two Hundred Twelve and 50/100 dollars ($212.50) each month for his then girlfriend's rent, take various vacation trips with her and contributed to the support of her children, all per [Husband's] testimony." After considering all of the provisions of Section 452.335, the trial court awarded Wife $2,000 a month in "non-modifiable" maintenance. It also included a provision which stated: "The [c]ourt finds that [Wife] has filed an application for [s]ocial [s]ecurity benefits. The [c]ourt further orders that should [Wife] be awarded social security benefits [Husband's] maintenance obligation shall be reduced dollar for dollar for each dollar paid to [Wife] for disability benefits, but not for general retirement benefits."

Ordinarily, trial courts prefer to award modifiable maintenance. *In re Marriage of Boston,* 104 S.W.3d 825, 834 (Mo.App. S.D.2003). This follows because a maintenance award based on Section 452.335 is founded on need; consequently, it can extend only as long as the need exists. *Cates v. Cates,* 819 S.W.2d 731, 735 (Mo. banc 1991). *See* Section 452.335.3.[8] If future events pertinent to the issue of maintenance are uncertain, which is usually the case when a maintenance award is "based on need," the maintenance award should be modifiable. *Lawry,* 883 S.W.2d at 90.

Section 452.335 does not bestow unfettered discretion on the trial court. *Lawry,* 883 S.W.2d at 90. "Just as an order terminating maintenance at a definite date in the future must be supported by substantial evidence of an impending change of the parties' circumstances, a maintenance order providing that it is 'non-modifiable' must be justified by the facts and circumstances of that particular case." *Id.* (internal citations omitted). Thus, "maintenance issues for support and only for support—and then, until the dependent spouse achieves a reasonable self-sufficiency." *Nelson v. Nelson,* 720 S.W.2d 947, 952 (Mo.App. W.D.1986).

Husband argues that the trial court abused its discretion in making Wife's award of maintenance nonmodifiable. We agree.[9] Courts have consistently found that if it is uncertain that future events might obviate the need or basis on which

---

8. Section 452.335.3 states:
 The maintenance order shall state if it is modifiable or nonmodifiable. The court may order maintenance which includes a termination date. Unless the maintenance order which includes a termination date is nonmodifiable, the court may order the maintenance decreased, increased, terminated, extended, or otherwise modified based upon a substantial and continuing change of circumstances which occurred prior to the termination date of the original order.

9. We disagree with Husband's argument that Section 452.335 "mandates" that a termination date be included in the judgment. Section 452.335.3 states that "[t]he court *may* order maintenance which includes a termination date." (emphasis added).

maintenance is predicated, the award should be modifiable. *Allen v. Allen,* 927 S.W.2d 881, 890 (Mo.App. W.D.1996). While we acknowledge that Wife does suffer from a debilitating disease, the record reveals that she was a career foster parent during the time she was married to Husband and also suffering from the effects of Lupus. Wife is also a former real estate broker. At the time of trial, she testified about the current status of her health, but failed to include any medical records or expert testimony regarding her future health situation. The record is devoid, therefore, of any evidence regarding what her future health status might be. or her ability to be employed in the future.

■■■ Further, we note that the trial court failed to include a provision abating the maintenance award in the event of Wife's re-marriage or other future events which might alter her need for support. As "maintenance which is non-modifiable may extend beyond the receiving spouse's remarriage," the trial court's award requires Husband to pay $24,000 a year to Wife for maintenance in perpetuity, regardless of her need or her marital status. *See Lawry,* 883 S.W.2d at 90. Support payments must be limited to the demonstrable needs of the party receiving support. *Heins v. Heins,* 783 S.W.2d 481, 483 (Mo.App. W.D.1990). Additionally, the trial court mentioned Husband's infidelity on several occasions in its consideration of Section 452.335 in the amended judgment. While the trial court is permitted by Section 452.335.2(9) to consider "[t]he conduct of the parties during the marriage," it should award maintenance not to redress a past injury, but for spousal support after the entry of the judgment. *Nelson,* 720 S.W.2d at 952.

As the trial court stated in *Burnett v. Burnett,* 18 S.W.3d 27, 33 (Mo.App. W.D. 2000), "Just as . . . it is uncertain that wife's financial situation will change in order to justify limiting the maintenance award . . . it is also uncertain that future events might not also present reason for the maintenance to be modified." We find the same to be true in this situation. There was no evidence that Wife's needs would not change in the future. The trial court's award of nonmodifiable maintenance was not justified by the facts and circumstances in this case. *Lawry,* 883 S.W.2d at 90.

■■■ Husband additionally argues that the amount of the maintenance award was unreasonable in light of his ability to pay. In its entirety, Husband's factual argument in support of this assertion is:

> The trial court in its Amended Judgment based the amount of maintenance of $2,000[ ] per month on [Husband's] income at the time of trial with no consideration for the standard of living during the parties marriage and [Husband's] income of $44,000[ ] according to his income tax return for 2000. The trial court abused its discretion by failing to consider the ability of [Husband] to satisfy his own needs and to pay the amount of $2,000[ ] in maintenance to [Wife] and maintain her health insurance at his own expense.

An appellant must develop the contention raised in the point relied on in the argument section of the brief, and the argument should show how the principles of law and the facts of the case interact. *Weisenburger v. City of St. Joseph,* 51 S.W.3d 119, 124 (Mo.App. W.D.2001). Husband's argument here does not demonstrate that the facts of this case would require a different result.

First, Husband fails to direct this court to any evidence in the record in support of his factual argument. Rule 84.04(i) requires that all statements of fact and argument in an appellate brief have specific

page references to the legal file or transcript. "Because of the complexity of this case and the number of issues raised on appeal, it was imperative that we have an immediate, accurate, complete, and unbiased understanding of the facts relevant to those issues." *In re Marriage of Gardner*, 973 S.W.2d 116, 125 (Mo.App. S.D.1998)(quoting *State ex rel. Webster v. Missouri Resource Recovery, Inc.*, 825 S.W.2d 916, 937 (Mo.App. S.D.1992)).

■■■ Our own review of the record demonstrates that the trial court specifically did address the parties' standard of living during the marriage, and Husband's income and ability to satisfy the maintenance award. The trial court's findings with reference to the latter matter included a finding that Husband "has a gross income of at least Six Thousand dollars ($6,000.00) per month" which was consistent with Husband's testimony at trial. The argument portion of his brief does not cite to any portion of the record that would demonstrate that this amount of income is incorrect. Likewise, Husband's argument does not cite to any portion of the record demonstrating what his income would be after taxes, or what his necessary expenses are. Finally, although Husband argues that the trial court should have considered his income for 2000 as demonstrated by his income tax return for that year instead of his income as of the time of trial, he has failed to include that income tax return in the record on appeal. An appellant has the duty to present a record that contains all the evidence necessary for making determinations of the issues raised. *Gossett*, 98 S.W.3d at 900; Rule 81.12(a). "This court is bound by the record on appeal and cannot speculate as to what evidence may have been presented

below which is not reflected by the record." *Id.* at 901.

Husband has failed to demonstrate that the trial court abused its discretion in setting the amount of maintenance to be paid by Husband to Wife, and under the applicable standard of review, that award is affirmed. As indicated earlier, however, the evidence was not sufficient to support the designation of the maintenance as nonmodifiable, and that portion of the judgment is reversed.

## AWARD OF ATTORNEY FEES TO WIFE

■■ In another point, Husband alleges the trial court abused its discretion in awarding attorney fees to Wife in the amount of $5,000 "when the evidence was that she had only incurred the sum of $4,651.80." [10]

■■■ Section 452.355.1 permits, but does not require, a trial court to award attorney fees. As a general rule, the parties to a dissolution are to pay their own attorney fees. *Echele v. Echele*, 782 S.W.2d 430, 441 (Mo.App. E.D.1989). The two factors that the trial court should consider in awarding attorney fees are "the actions of the parties during the pendency of the action, and the parties' financial situation." *Thill*, 26 S.W.3d at 208. "The trial court's ruling with respect to the distribution of attorney fees is presumptively correct." *Hennessey v. Smith–Hennessey*, 997 S.W.2d 538, 544 (Mo.App. W.D.1999). Only on a showing that the trial court abused its broad discretion will an appellate court overturn the trial court order. *Adams v. Adams*, 51 S.W.3d 541, 549 (Mo. App. W.D.2001). To show an abuse of discretion by the trial court in its attorney

10. In its amended judgment, the trial court found that "[a]fter consideration of the various statutory factors [Wife] and her attorney, [] are awarded reasonable attorney fees of $5,000.00."

fee award, the complaining party has the burden to show that the order is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of deliberation." *Ederle v. Ederle,* 741 S.W.2d 883, 885 (Mo.App. E.D.1987).

█ Husband's complaint here is not necessarily that the trial court erred in the actual award of attorney fees to Wife, but that the trial court erred in the amount awarded. It has long been held that the trial court is considered an expert in the necessity, reasonableness, and value of attorney fees. *In re Fuldner,* 41 S.W.3d at 596. Further, the trial court is not limited to fees actually earned, but can award fees to be incurred. *Tisone v. Tisone,* 881 S.W.2d 647, 649 (Mo.App. E.D.1994).

Considering that the trial court awarded Wife $5,000 as opposed to the $4,651.80 she requested, the trial court's award does not appear so unreasonable and arbitrary as to shock our sense of justice. Husband's point is denied.

## CONTEMPT

█ Husband also asserts that the trial court erred in finding him in contempt for failing to "maintain insurance and finding that his acts were intentional and willful." He argues that there was error in the award to Wife of $2,700 in costs she incurred while she was without health insurance where Wife herself testified that she didn't believe Husband's conduct to be malicious.

Prior to the trial in this matter, a temporary order was entered on May 15, 2000. The temporary order required, *inter alia,* Husband "to maintain medical insurance for [Wife] as has been maintained through-

out the marriage and pay the premiums therefore." During the parties' marriage, they were both covered by medical insurance provided by Husband's FAA pension through the Postman's Benefit Plan. The parties later had supplemental insurance due to Husband's employment with DFS through United Health. In June of 2000, when Husband quit his job at DFS to become a counselor in the private sector, the parties lost their insurance coverage through United Health. The parties' marriage was dissolved on November 29, 2000. Thereafter, under the terms of Husband's Postman's Benefit Plan insurance, once the parties' marriage was dissolved Husband could no longer provide coverage for Wife, and she was dropped from that insurance plan.[11]

Following the entry of the original decree, Wife filed a motion for contempt and an order to show cause on January 23, 2001, alleging that Husband willfully failed to comply with the court's order to provide her with health insurance. The motion for contempt was addressed at the April 4, 2001 hearing. Thereafter, in the amended judgment, which was entered on July 3, 2003, the trial court found "from the evidence that [Husband] is in contempt of this [c]ourt's temporary order to maintain insurance on [Wife]. The [c]ourt further finds that [Husband's] actions were intentional and willful. Accordingly, [Wife] is awarded $2,700.00, being the costs of medical treatments, and prescriptions incurred by her as a result of [Husband's] violation of this [c]ourt's order." The court stated that Husband was to pay the $2,700 "within ninety (90) days" of entry of the judgment. Husband filed his notice of appeal on August 7, 2003.

---

11. According to Wife's testimony, Husband had the option of re-enrolling her in the plan by changing her designation from "spouse" to "former spouse;" yet he elected to seek new insurance coverage altogether.

On November 17, 2003, while this appeal was pending, Wife filed another motion for contempt alleging that Husband failed to provide her with health insurance. A show cause order was issued, and at the close of a hearing on December 29, 2003, the trial court issued an oral order of commitment against Husband.[12] Husband thereafter posted a $2,700 appeal bond.

 "In all appeals, this [c]ourt is required to examine its jurisdiction sua sponte." *In re Marriage of Werths*, 33 S.W.3d 541, 542 (Mo. banc 2000). "In order for an appeal to lie, there must be a final judgment or order." *Strickland v. Strickland*, 941 S.W.2d 866, 867 (Mo.App. S.D.1997). "A final judgment is one which disposes of all parties and issues in the case." *Id.* An order of civil contempt is not a final judgment until the order is enforced by actual incarceration or otherwise. *Arnold v. Arnold*, 103 S.W.3d 784, 785–86 (Mo.App. E.D.2003). "If an intended judgment does not dispose of all issues and all parties in the case or does not form a final disposition of the matter, it is not a final, appealable judgment and we have no jurisdiction to entertain an attempted appeal therefrom." *Werths*, 33 S.W.3d at 542 (quoting *Avidan v. Transit Cas. Co.*, 20 S.W.3d 521, 523 (Mo. banc 2000)).

Here, "[a]lthough the contempt and [dissolution] were consolidated for purposes of receiving evidence, they are separate for purposes of appeal." *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778, 783 (Mo. banc 2003). The amended judgment instructed Husband to pay Wife $2,700 "within ninety (90) days" of the entry of the judgment. The amended judgment, from which this appeal is taken, neither disposes of the issue of contempt altogeth-

er, nor does it enforce the judgment via an order of commitment. *See Arnold*, 103 S.W.3d at 785; *Werths*, 33 S.W.3d at 542. The oral order of commitment was not made until December 29, 2003, well after this appeal was filed. Given that an order of civil contempt is not a final judgment until the order is enforced by actual incarceration or otherwise, the judgment from which Husband appeals was not a final judgment at the time that his appeal was filed; therefore, the issue of contempt is not ripe for our consideration. *See Arnold*, 103 S.W.3d at 785. We lack jurisdiction to hear such a matter. *See Southard v. Southard*, 105 S.W.3d 560, 562 (Mo.App. S.D.2003).

## MOTION FOR NEW TRIAL, TO SET ASIDE, AND TO RECONSIDER

 Husband's point in this regard states in full:

> The trial court erred in summarily overruling and denying [Husband's] motion for new trial and/or reconsideration following the extensive evidentiary hearing consisting of evidence that [Wife] was cohabitating with her wealthy paramour in California where she has no living expenses, where [Wife] was no longer living in the marital residence, where [Wife] acknowledged an improvement in her alleged medical condition allowing her to participate in various extracurricular activities contrary to her testimony at trial and where [Husband's] health had deteriorated because the evidence was relevant to the division of marital property and [Wife's] claim for maintenance and the trial court's refusal to grant a new trial and consider the evi-

---

**12.** Having scoured the voluminous record in this case, this court is unable to discern if a written order of commitment was issued by the trial court. The transcript reveals such a pronouncement from the bench, but the docket entries and legal file contain no evidence that a written order was ever entered.

dence was prejudicial to [Husband] and an abuse of discretion.

On November 29, 2000, and on April 4, 2001, the trial court heard evidence in this matter. Having taken the matter under advisement following the hearing, the trial court entered its findings of fact and conclusions of law on September 28, 2001. Husband filed his "Motion for New Trial and/or Reconsideration, Motion to Set Aside, or in the Alternative a Request for Specific Findings of Fact and Conclusions of Law or an Amended Judgment" on October 24, 2001. A January 8, 2002 hearing was held on Husband's motion and both sides presented evidence. The transcript from the January 8, 2002 hearing reveals numerous changes in the circumstances of both parties. After the hearing, a memorandum order was entered by the trial court on January 17, 2002, which provided in part:

> Comes now the Court and, after hearing on [Husband's] Motion for a New Trial and [Wife's] Motion for Contempt on 1/8/02 and being fully advised of facts applicable to both motions and applicable law, denies and overrules both motions [.]

The trial court has wide discretion in ruling on a motion for a new trial and is vested with substantial discretion over matters of fact in ruling on new trial motions. *Runyan v. Runyan,* 907 S.W.2d 267, 274 (Mo.App. W.D.1995); *Roux v. City of St. Louis,* 690 S.W.2d 448, 450 (Mo.App. E.D.1985). "In reviewing a trial court's denial of a motion for a new trial, we must indulge every reasonable inference favoring the trial court's ruling and not reverse that ruling absent a clear abuse of discretion." *Ballard,* 77 S.W.3d

at 115. An abuse of judicial discretion occurs "when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Wright v. Wright,* 1 S.W.3d 52, 57 (Mo.App. W.D.1999). "If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion." *Williams v. Williams,* 55 S.W.3d 405, 411 (Mo.App. W.D.2001).

It is well settled that an appellant must develop, in the argument section of the brief, error raised in the point relied on. *Stickley v. Auto Credit, Inc.,* 53 S.W.3d 560, 564 (Mo.App. W.D.2001). It is not within the appellate court's province to speculate about arguments that are not asserted or that are merely asserted but not developed. *Bean v. Bean,* 115 S.W.3d 388, 393 (Mo.App. S.D.2003). Thus, errors raised in the points relied on, which are not supported by argument, are deemed abandoned and present nothing for appellate review. *Coleman v. Gilyard,* 969 S.W.2d 271, 273 (Mo.App. W.D.1998).

Here, Husband fails to fully develop his alleged point of trial court error in the argument portion of his brief. Following two pages of factual recitation, Husband merely states that the trial court offered "no other explanation for or analysis of its denial of [his] Motion for New Trial" and "the evidence offered at the hearing clearly was relevant."[13] He draws no comparisons to illustrate how the trial court abused its discretion or, more importantly, how he was prejudiced by the

---

**13.** We note that Husband's request for specific findings of fact and conclusions of law contained in his motion for new trial was limited to the issue of maintenance, as was his April 4, 2001, request.

ruling. A "submission of error, being without reasoned argument ... does not require, or even allow, a decision." *Eagle ex rel. Estate of Eagle v. Redmond,* 80 S.W.3d 920, 923 (Mo.App. W.D.2002).

 Additionally, other than the cases cited for the standard of review, Husband fails to cite a single case in support of his argument. An appeal is deficient if an appellant fails to cite authority for a point or fails to specify why citations are unavailable. *In re Marriage of Gerhard,* 34 S.W.3d 305, 307 (Mo.App. S.D.2001). For the foregoing reasons, Husband has failed to preserve this issue for our review, and it is therefore denied.

## CONCLUSION

The amended judgment is reversed as it relates to the classification of property as marital or separate property, the division of marital property, and the award of non-modifiable maintenance. The case is remanded to the trial court for entry of a judgment consistent with this opinion after reconsidering such matters, which may include the taking of additional evidence. The amended judgment is otherwise affirmed.