**Helen L. DUNNAGAN, Respondent,**

v.

**Gregory John DUNNAGAN, Appellant.**

**No. 28056.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 29, 2007.

Connie J. Clark, Osage Beach, for Appellant.

John E. Curran, Osage Beach, for Respondent.

Before BARNEY, P.J., LYNCH, C.J. and CRAWFORD, SR. J.

PER CURIAM.

Appellant Gregory John Dunnagan ("Husband") appeals the trial court's judgment dissolving his marriage to Respondent Helen L. Dunnagan ("Wife"). Husband asserts four points of trial court error.[1]

The record reveals the parties began residing together in 1991; were married on June 24, 1995; and separated on October 20, 2002. There were no children born of the marriage.

At the time of trial Husband was employed as a construction supervisor with GSD–L.L.C. Construction ("GSD Construction"), a company owned by his son. Husband, was fifty-three years old at the time of trial, and recently had cancer surgery as well as heart bypass surgery.

Wife, who was forty-three years old at the time of trial, had previously owned a nail salon and had also worked in the office of the parties' businesses. Wife, who has

---

1. While Husband's brief has skirted many of the requirements of Rule 84.04, Missouri Court Rules (2007), and, indeed, is not a model of clarity, this Court has, nevertheless, been able to discern Husband's points relied on.

always had health problems, once again became ill in October of 2005, at which time she closed her nail salon. She was unemployed at the time of trial.

A trial was held on October 24, 2005. The trial court entered its "Judgment and Decree of Dissolution of Marriage" on July 5, 2006, and divided the parties' nonmarital and marital properties. This appeal by Husband followed.

■ The standard for reviewing a judgment of dissolution is the same as in any court-tried action. *Rivers v. Rivers*, 21 S.W.3d 117, 121 (Mo.App.2000). The decree must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[2] "We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence." *McCallum v. McCallum*, 128 S.W.3d 62, 65 (Mo.App.2003). Additionally, we defer to the trial court's determinations of credibility in making our review. *In re Marriage of Colley*, 984 S.W.2d 163, 166 (Mo.App. 1998).

■ The trial court is given broad discretion in dividing property, and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion. *Kirkwood v. Kirkwood*, 77 S.W.3d 675, 680 (Mo.App.2002). The trial court abuses its discretion only when its ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *In re Marriage of Holden*, 81 S.W.3d 217, 225 (Mo.App.2002). "The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption." *In re Marriage of Pahlow*, 39 S.W.3d 87, 91 (Mo.App.2001).

■ Pursuant to section 452.330.1,[3] the trial court in a dissolution proceeding is to divide marital property and debts in such proportions as the court deems just after considering all relevant factors set out therein. See Rivers, 21 S.W.3d at 122. In dissolving a marriage, the trial court sets aside to each spouse his or her nonmarital property, then divides the remaining marital property and debts in a just manner after considering all relevant factors enumerated in section 452.330. *Ballard v. Ballard*, 77 S.W.3d 112, 116 (Mo.App. 2002). The trial court is vested with great flexibility in its division of marital property. *Shepard v. Shepard*, 47 S.W.3d 412, 417 (Mo.App.2001). There is no set formula concerning the weight given to the factors considered under section 452.330. *Kester v. Kester*, 108 S.W.3d 213, 224 (Mo. App.2003). While the statute requires a fair and equitable division of marital property, it does not require an equal division of marital property. *Id.*

In his first point relied on Husband asserts the trial court erred

> in failing to value all nonmarital assets, because setting aside the nonmarital properties to each party and valuation of such nonmarital property is required by section 452.330 . . . in that the value of nonmarital property set apart to each spouse is a relevant factor to consider in

---

2. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form in Rule 84.13(d).

3. All statutory references are to RSMo 2000.

dividing the [marital] assets in just proportions to each spouse.

In three sub-points, Husband takes issue specifically with the fact that the trial court classified certain items of personal property as marital in nature as opposed to nonmarital in nature.

 Under section 452.330 a trial court must follow a two-step procedure in dividing property: "(1) the court must first set aside to each spouse his or her nonmarital property; [4] and (2) then divide the marital property and debts in such proportions as the court deems just." [5] *In re Marriage of Reese*, 155 S.W.3d 862, 869 (Mo.App.2005). "The trial court must make specific findings as to whether each asset or class of assets is marital property subject to division or nonmarital property belonging to a spouse individually." *In re Marriage of Michel*, 142 S.W.3d 912, 921 (Mo.App.2004). "Such an identification of property is the necessary antecedent of a subsequent just division of marital property." *Id.* "An 'error in classifying property is not necessarily prejudicial, however, unless it materially affects the merits of the action.'" *Id.* (quoting *Farnsworth v. Farnsworth*, 108 S.W.3d 834, 839 (Mo.App. 2003)).

In his first sub-point, Husband asserts the trial court erred in classifying a "[g]reen [c]ouch, love seat and glider" valued at $2,500.00 as marital property. At trial, Husband testified that the couch, loveseat and glider were nonmarital property which he "sold [his premarital] furniture to buy. . . ." He testified that he felt the furniture was worth "[$]1,000, $1,200 at the most." On the other hand, Wife testified that in reference to the "the green couch, the love seat, and the glider/rocking chair" she and Husband "bought those together." She stated that she disagreed with Husband's assertion that those items were nonmarital property. She further testified the items were valued at $2,500.00.

Husband also maintains the trial court erred in classifying a "[d]ining [k]itchen table, chairs & hutch" valued at $450.00 as marital property. Husband testified the kitchen table, chairs, and hutch were "bought before [they] w[ere] married" and were his nonmarital property. He testified the furniture "was bought before *we* w[ere] married and I don't know what the value is. I think *we* picked it up. *We* w[ere] living together when *we* bought it. [$]350 to buy it." (Emphasis added). He then stated he was not sure of the present value of the kitchen table, chairs, and hutch. Wife testified that she and Husband purchased "the dining kitchen table with six chairs and a hutch" after the marriage. She stated that they paid $300.00 for the items, but she believed their value to be $450.00.

---

**4.** "Generally, property is nonmarital if a spouse owned it before the marriage and retained separate title to it after marriage." *In re Marriage of Thomas*, 199 S.W.3d 847, 863 (Mo.App.2006).

**5.** Section 452.330.2 states that:
'marital property' means all property acquired by either spouse subsequent to the marriage except:
(1) Property acquired by gift, bequest, devise, or descent;
(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
(3) Property acquired by a spouse after a decree of legal separation;
(4) Property excluded by valid written agreement of the parties; and
(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

Husband, likewise, asserts the trial court erred in classifying a "[q]ueen [b]edroom [s]et" valued at $800.00 as marital property. Husband testified the queen bedroom set "was bought from the same person that [he] bought the hutch from all at the same time" prior to the parties' marriage, thus, it was nonmarital property. He testified the set was valued at "[t]hree, four hundred dollars." Wife testified the queen bedroom set was "marital property" and it was "purchased after the marriage" with "marital funds." Wife testified the bedroom set was valued at $800.00.

As previously related, this Court defers to the trial court's determinations of credibility in making our review. *Colley*, 984 S.W.2d at 166. After hearing Husband and Wife's conflicting testimony regarding when the furniture at issue was purchased, it is apparent from the judgment that the trial court determined Wife's testimony was more credible than Husband's testimony when it found the property to be marital in nature. Likewise, regarding the valuation of that property, "[t]he trial court is entitled to believe or disbelieve the testimony of either party concerning the valuation of marital property in a dissolution proceeding...." *Wofford v. Wofford*, 991 S.W.2d 194, 200 (Mo.App.1999). The trial court did not err in finding the couch, loveseat and glider; kitchen table, chairs and hutch; and queen bedroom set were marital property. Sub-point denied.

As best we discern Husband's second sub-point Husband asserts the trial court erred in classifying two promissory notes, one in the principal sum of $10,000.00 and the second in the principal sum of $5,734.00, as marital property. Husband testified that prior to the marriage he owned a twenty-five percent interest in a limited partnership known as Dunnagan & Associates. Husband related that Dunnagan & Associates owned a resort at Lake of the Ozarks and the resort property was "liquidated" during the parties' marriage. He stated that during the marriage he never commingled the assets from the sale of the property from Dunnagan & Associates and that it was his nonmarital property. He specifically testified that the two promissory notes "came from the sale of the assets of Dunnagan & Associates property."[6] Husband also expressly acknowledged that other than the promissory notes themselves, he had no documentation to prove that the "[$]15,000 actually came from separate funds...."

Wife testified that when Dunnagan & Associates sold the property in question, Husband told her that his share "was paid to the bank, Central Bank. That's what they owed the bank. There was no money left on that." Wife stated there was additional property, consisting of certain highway frontage still owned by Dunnagan & Associates, but she was unsure of the value of the property. Wife also acknowledged that she learned that her Husband

---

6. Husband's testimony on this issue is confusing, as is much of the testimony relating to Husband's financial dealings. The fact that Husband failed to file an income tax return on his business interests since 2000 no doubt hindered the trial court's determination, as it does this Court in its review. In our perusal of Exhibits E and F evidencing the two promissory notes in question, they show that one note in the principal amount of $10,000.00 was executed by GSD Construction on November 8, 2004, and is made payable to Husband. The second promissory note in the principal amount of $5,734.00 was also executed by GSD Construction on March 11, 2005, and was also made payable to Husband. The best interpretation of Husband's testimony is that he received monies from the sale of certain assets by Dunnagan & Associates and, in turn, as best we discern, must have loaned all or part of these monies to GSD Construction. In its Judgment, the trial court awarded the $10,000.00 promissory note to Wife and the remaining promissory note to Husband.

had "lent GSD Construction at least approximately $15,000.00 in two promissory notes...." However, she acknowledged she did not know where Husband obtained the money to lend to GSD Construction.

Again, we defer to the trial court's determinations relating to the credibility of the witnesses. *Colley*, 984 S.W.2d at 166. Furthermore, the trial court is free to believe none, part, or all of the testimony of any witness. *Id.* "Husband, as the party claiming that the property in question is [nonmarital], bears the burden of proving his contention by clear and convincing evidence." *Klockow v. Klockow*, 979 S.W.2d 482, 488 (Mo.App.1998). We cannot say the trial court erred in finding the two promissory notes were marital in nature. Sub-point denied.

Having said this, we also determine that Husband's assertions in his sub-point three, that the tax liability of $40,555.00 generated from the sale of the foregoing properties is a nonmarital debt, also lacks merit.[7] At trial Husband stated that "[w]hen the bank was paid off [from the sale of the property], [he] still gained a liability in taxes even though [he] didn't gain anything from it." Wife offered no testimony relating this tax liability.

 " 'The phrase "marital debts" encompasses all debts incurred during the marriage, either jointly or separately.' " *Gryder v. Gryder*, 129 S.W.3d 467, 471 (Mo.App.2004) (quoting *Pahlow*, 39 S.W.3d at 92). "Marital debt is debt acquired subsequent to commencement of the marriage unless an exception applies." *Travis v. Travis*, 163 S.W.3d 43, 48 (Mo.App. 2005). The trial court is vested with broad discretion in dividing marital debt, and appellate authority will not disturb its divi-

sion absent a clear showing of abuse of discretion. *Rawlings v. Rawlings*, 36 S.W.3d 795, 798 (Mo.App.2001). Here, we cannot say the trial court abused its discretion in classifying the $40,555.00 tax liability as marital property. Sub-point three is denied. Point One is denied.

In his second point, Appellant broadly asserts the trial court erred in failing to value all marital assets, as required by section 452.330. He maintains that "such values are required to determine if the marital assets are divided by the court in just proportions to each spouse."

In his first sub-point of his second point, Husband asserts the trial court erred in failing to set a value for a 1997 Ford Probe which was awarded to Wife as her separate, marital property.

 Initially we note that Husband's assertion that "[a]ll marital assets must be valued by the trial court pursuant to [s]ection 452.330 ..." is incorrect. The trial court *is not required* to specifically determine the value of particular items of marital property as long as evidence from which the value of the marital property can be determined appears in the record. *Svejda v. Svejda*, 156 S.W.3d 837, 840 (Mo. App.2005); *Waldon v. Waldon*, 114 S.W.3d 428, 431 (Mo.App.2003).

 Here, Wife testified that "the balance on the '97 Ford Probe loan at the present time in May of 2005 is $2,981 ..." and she believed the vehicle was worth $3,000.00. Husband testified that the Ford Probe was valued at $3,000.00 and should be awarded to Wife. There was sufficient evidence in the record to determine the value of the 1997 Probe such that the trial court did not err in failing to

---

7. Husband has considerable tax debts which have accrued from his failure to pay taxes on his business ventures since 2000.

specifically set a value for the vehicle in its judgment. Sub-point denied.

In his second sub-point under this point relied on, Husband asserts the trial court erred in awarding to Husband as his separate, marital property an interest in a 2004 Ford truck now titled in the name of GSD Construction. He maintains the "designation of the vehicle as a marital asset is clear error and such should be stricken from the order."

Husband testified that as part of his employment with GSD Construction he receives $36,000.00 a year, health insurance and a vehicle. He stated that during the time the parties were separated he sold his personal vehicle, a 1998 pickup truck, for $8,400.00. He stated he took that money and "put it into the [new 2004 Ford four-wheel drive pickup] truck ... [he is currently] driving." He stated he owed money on the 1998 pickup truck and he gave GSD Construction "just a couple thousand [for the new truck] after the [1998] truck was paid off." He testified he thought he owed $5,000.00 or $6,000.00 on the 1998 pickup truck when he sold it. Wife testified that during the marriage Husband had "a white Du[a]lley truck that [she] was cosigner for him to get that truck." She stated Husband sold that truck during their separation and that he had a new truck, but she did not know how the new truck was titled or any of the details relating to its purchase.

As previously set out, "[a]lthough the trial court is not expressly required to assign specific values to marital property in its judgment, evidence from which the value of the marital property can be determined must appear in the record." *Svejda*, 156 S.W.3d at 840. Here, there was sufficient evidence presented wherein the trial court could properly determine the approximate value of the equity Husband received from the sale of the 1998 pickup truck owned by the parties and to set aside to Husband his interest in the 2004 pickup truck in question. We discern that the value amounts to some $2,000.00, a number conceded by Husband in his brief.

Nevertheless, we are concerned with the language in the trial court's judgment which appears to grant Husband an interest in the 2004 Ford Four-wheel drive pickup titled in the name of "GSD Construction, L.L.C." It is clear from the record that GSD Construction was not a party to this lawsuit. "A trial court does not have jurisdiction to enter a decree dividing property not owned by either spouse." *Bullard v. Bullard*, 929 S.W.2d 942, 946 (Mo.App.1996). We reverse that portion of the judgment containing language granting to Husband a specific interest in the 2004 Ford pickup truck titled in the name of GSD Construction. We remand the matter to the trial court to award to Husband the sum of $2,000.00 as his share of marital property, resulting from the sale of the parties' 1998 pickup truck. Sub-point denied in part and granted in part.

In his third sub-point, Husband asserts the trial court erred in distributing the parties' marital debts in that it awarded duplicative debts to Wife. Wife concedes the trial court erred in ordering her to assume three separate business loans to First Bank of the Lake. The trial court set the following debts aside to Wife: (1) a "car loan" from First Bank of the Lake for $2,981.00; (2) a "business loan" from First Bank of the Lake for $248.00; and (3) a "business loan" from First Bank of the Lake for $2,705.00. At trial, Wife testified that at one time she had three different loans with First Bank of the Lake, but she testified that at some point she consolidated the loans. She testified that the outstanding balance on the consolidated loan

was $3,100.00 and that she has a monthly payment of $166.00.

The trial court's award of $5,934.00 in debts to Wife was in error and is not supported by her testimony at trial that the loans were valued at $3,100.00. It is clear that Wife has but one loan, with a monthly payment of $166.00 per month. That part of the trial court's judgment awarding the marital debts in question constitutes error and must be reversed. Sub-point granted. Point Two is denied in part and granted in part.

Husband's third point on appeal asserts the trial court erred in granting Wife "a highly disproportionate division of marital property because such division was an abuse of discretion in that it was not a just division after considering all relevant factors."

 When dividing marital property, the trial court must consider all relevant factors including: (1) the economic situation of each spouse when the property is divided, while considering the desirability of awarding the marital home to the custodial parent; (2) how each spouse contributed to the acquisition of marital property; (3) the value of non-marital property awarded to each spouse; (4) the conduct of each spouse during the marriage; and (5) the custodial arrangements for the minor children. *Nelson v. Nelson,* 25 S.W.3d 511, 517 (Mo.App.2000); § 452.330.1. "A trial court is prohibited from entering a valuation of marital property not supported by the evidence at trial, but the trial court nevertheless, enjoys broad discretion in valuing property." *Farley v. Farley,* 51 S.W.3d 159, 164 (Mo.App.2001). This Court will presume that the trial court considered all evidence when divid-

ing the marital property and believed the testimony and evidence consistent with its judgment. *Nelson,* 25 S.W.3d at 517.

 Initially we note that the division of marital property need not be equal, but it must be fair and equitable considering the circumstances of the case. *Rawlings,* 36 S.W.3d at 798. The trial court awarded Wife total marital assets of $15,032.00 plus the 1997 Ford Probe discussed above and allocated to her marital debts in the total amount of $11,146.00.[8] The trial court set aside to Husband marital assets of $11,376.02 plus his interest in his vehicle and allocated marital debts to Husband in the amount of $101,590.00.

We note that the debts allocated to Husband by the trial court are as follows: $2,729.00 on a Sears credit card; $1,477.00 to Capital One; $1,500.00 to Lake Regional Hospital for "[H]usband's co-pays;" $19,943.00 to the Internal Revenue Service ("IRS") for "1995 personal taxes;" $40,555.00 to the IRS for taxes from "Dunnagan & Associates;" and $35,386.00 to the IRS for Dunnagan Concrete's tax liability. However, at trial Husband specifically testified he would "take responsibility for" the Sears credit card debt of $2,729.00 and he would "take responsibility for" the Capital One credit card debt of $1,477.00. Regarding his medical bill to Lake Regional Hospital for $1,500.00, Husband testified he was "paying [his] own medical bills right now" and he would take "responsibility" for that particular bill. Further, Husband testified he was "assuming as [a] personal liability" the 1995 personal tax liability in the amount of $19,943.00. Likewise, he was "willing to assume those tax liabilities" and he did not "have any problem taking the liabilities" of $35,386.00 on Dunnagan Concrete.

---

8. The marital debts set aside to Wife include the loans to First Bank of the Lake discussed in Point Two above, a bill to Lake Regional Hospital in the amount of $4,754.00 for "[W]ife's co-pays," and a bill to Dr. Neis for $458.00.

Keeping in mind that Husband testified that he would assume the bulk of all marital debts, we cannot say that the division of the marital assets was so skewed as to amount to an abuse of discretion by the trial court. Wife received assets of $15,032.00 and the 1997 Ford Probe; Husband was awarded assets of $11,376.02 and, and as we now modify the judgment, the equity from the sale of the parties' 1998 truck which we now value at $2,000.00. Thus, as modified, we cannot find the trial court's division of property was unfair and unreasonable under the circumstances of this case. *Rawlings*, 36 S.W.3d at 798. Point Three is denied as modified.

■ In his fourth and final point relied on Husband asserts the trial court abused its discretion in awarding Wife $8,000.00 in attorney fees.[9]

■ A trial court is given great discretion in awarding attorney fees and costs in a dissolution proceeding, and the court's decision should not be overturned unless it amounts to an abuse of discretion. *Silcox v. Silcox*, 6 S.W.3d 899, 905 (Mo. banc 1999). "The party challenging the award has the burden to prove an abuse of discretion, which will be found only where the decision is so arbitrary as to shock one's sense of justice." *Id.*

■ With regard to awards of attorney fees, Missouri courts generally follow the "American rule," which provides that each party should bear his or her own litigation expenses. *Cohen v. Cohen*, 73 S.W.3d 39, 55 (Mo.App.2002). " 'However, a trial court may order one party to pay the other's attorney's fees and costs where such is authorized by statute.' " *Id.* (quoting *Laubinger v. Laubinger*, 5 S.W.3d 166,

181 (Mo.App.1999)). In that respect, section 452.355.1 provides that the trial court may award attorney fees to a party in a dissolution action "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action...." "In ruling [on] a party's request for attorney fees in a dissolution case the trial court must consider all relevant factors, including the financial resources of the parties, the merits of the case, and the actions of the parties during the pendency of the action." *Miller v. Miller*, 184 S.W.3d 174, 186 (Mo.App. 2006).

At trial, Wife testified she incurred legal fees of $894.43 to the law firm of Coultas and Green, who represented her prior to trial, and total legal fees for trial counsel in the amount of $14,092.97. Wife entered into evidence copies of bills she received for legal services rendered during these proceedings. Wife testified she had no money with which to pay her legal bills and she thought the bills were reasonable.

Here, there was a great deal of evidence relating to Husband's various business ventures all of which lacked significant documentation. Additionally, Husband failed to file tax returns for a number of years relating to his various business ventures, making it difficult for Wife to conclude the discovery process. *See Sola v. Bidwell*, 980 S.W.2d 60, 68 (Mo.App.1998).

Further, there was evidence at trial, albeit undocumented, relating to Wife's ill health and inability to work. Husband maintains he should not have to pay Wife's attorney fees in part because he was ordered to pay "considerable marital debt of the parties." Again, however, we do not

---

**9.** We note neither party in this matter requested findings of fact and conclusions of law and the trial court did not set out in its judgment which factors it considered in awarding attorney fees to Wife.

forget that Husband informed the trial court he would "take responsibility" for the bulk of the marital debts.

It was Husband's burden to prove the trial court abused its discretion in awarding attorney fees to Wife. *See Silcox*, 6 S.W.3d at 905. He did not meet that burden. Point Four is denied.

Accordingly, we reverse that portion of the judgment which allocated certain marital debts to Wife, as set out in sub-point three of Point Two; and we reverse that portion of the judgment granting Husband an interest in a 2004 Ford four-wheel drive pickup truck titled in the name of GSD Construction, as set out in sub-point two of Point Two. This matter is remanded to the trial court for entry of a judgment consistent with this opinion. The judgment of the trial court is otherwise affirmed.